# EXHIBIT 2

# **Appendix II**

## English Original

Total no. of pages (excluding this cover page): 99

Cheng Wah Kin Alex
Solicitor, Hong Kong SAR
**K. C. HO & FONG**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GRAPHICS PROPERTIES HOLDINGS, INC., | |
| Plaintiff, | Civil Action No. 12-cv-209-LPS |
| v. | Jury Trial Demanded |
| ACER AMERICA CORPORATION, and ACER, INC., | |
| Defendants. | |
| GRAPHICS PROPERTIES HOLDINGS, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 12-cv-210-LPS |
| ASUS COMPUTER INTERNATIONAL, INC., | Jury Trial Demanded |
| Defendant. | |
| GRAPHICS PROPERTIES HOLDINGS, INC., | |
| Plaintiff, | Civil Action No. 12-cv-211-LPS |
| v. | Jury Trial Demanded |
| PANASONIC CORPORATION OF NORTH AMERICA, and PANASONIC CORPORATION, | |
| Defendants. | |
| GRAPHICS PROPERTIES HOLDINGS, INC., | |
| Plaintiff, | Civil Action No. 12-cv-213-LPS |
| v. | Jury Trial Demanded |
| TOSHIBA AMERICA INFORMATION | |

SYSTEMS, INC., and
TOSHIBA CORPORATION,

        Defendants.

GRAPHICS PROPERTIES HOLDINGS, INC.,

        Plaintiff,

        v.

VIZIO, INC.,

        Defendant.

Civil Action No. 12-cv-214-LPS

Jury Trial Demanded

## LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

        The United States District Court for the District of Delaware presents its compliments to the competent authorities of the People's Republic of China, and respectfully requests international judicial assistance under the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Convention"), an international treaty to which China acceded in 1997, and to which the United States accepted China's accession in 1998 (see Exhibit A for a copy of the Convention). The purpose of this request is to obtain specific, enumerated documents for use at trial in the above-captioned patent infringement suits presently pending before this Court. The information in this request is based on information contained in the parties' pleadings and in documents the defendants have already produced.

1.    *Sender:*             The Honorable Leonard P. Stark
                               United States District Judge
                               United States District Court
                               for the District of Delaware
                               J. Caleb Boggs Federal Building

844 North King Street
Unit 26
Room 6124
Wilmington, DE 19801-3555
United States of America

2.    *Central Authority of Requested State:*    International Legal Cooperation Center
Ministry of Justice of the People's Republic of China
10 Chaoyangmen Nandajie, Chaoyang District
Beijing 100020
People's Republic of China

中国
北京市朝阳区
朝阳门南大街10号
邮编: 100020
中华人民共和国司法部
司法协助交流中心

3.    *Persons to whom the executed request is to be returned:*

The Honorable Leonard P. Stark
United States District Judge
United States District Court
for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Unit 26
Room 6124
Wilmington, DE 19801-3555
United States of America

Lewis Ho
Dechert LLP
27/F Henley Building, 5 Queen's Road
Central, Hong Kong
Hong Kong

4.    *In conformity with Article 3 of the Convention. the undersigned applicant respectfully submits the following request:*

5.    *The authority requesting its execution and the authority requested to execute same:*

(a) *Requesting Judicial Authority:* The Honorable Leonard P. Stark
United States District Judge
United States District Court
for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Unit 26
Room 6124
Wilmington, DE 19801-3555
United States of America

(b) *To the Competent Authorities in:* People's Republic of China

6. *Names and addresses of the parties and their representatives:*

(a) *Plaintiff:* Graphics Properties Holdings, Inc.
56 Harrison Street, Suite 505
New Rochelle, New York 10801
United States of America

Representatives:
Brian E. Farnan
Rosemary J. Piergiovanni
919 North Market Street, 12th Floor
Wilmington, Delaware 19801
United States of America
+1 (302) 777-0300
+1 (302) 777-0301 (Fax)
bfarnan@farnanlaw.com

Martin Black
Kevin Flannery
Robert L. Masterson
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, Pennsylvania 19104
United States of America
+1 (215) 994-4000
+1 (215) 994-2222 (Fax)
martin.black@dechert.com
kevin.flannery@dechert.com
robert.masterson@dechert.com

(b)    *Defendants:*                                  Acer America Corporation
                                                      333 West San Carlos Street, Suite 1500
                                                      San Jose, California 95110
                                                      United States of America

                                                      Representatives:
                                                      Richard L. Horwitz
                                                      David Ellis Moore
                                                      Potter Anderson & Corroon, LLP
                                                      1313 North Market Street
                                                      Hercules Plaza, 6th Floor
                                                      P.O. Box 951
                                                      Wilmington, Delaware 19899-0951
                                                      United States of America
                                                      +1 (302) 984-6000
                                                      rhorwitz@potteranderson.com
                                                      dmoore@potteranderson.com

                                                      Jerry Chen
                                                      Kai Tseng
                                                      Freitas Tseng & Kaufman LLP
                                                      100 Marine Parkway Suite 200
                                                      Redwood Shores, California 94065
                                                      United States of America
                                                      +1 (650) 593-6300
                                                      +1 (650) 593-6301 (Fax)

                                                      Acer, Inc.
                                                      7F-5, 369, Fuxing N Road
                                                      Taipei 105
                                                      Taiwan

                                                      Representatives:
                                                      Richard L. Horwitz
                                                      David Ellis Moore
                                                      Jerry Chen
                                                      Kai Tseng
                                                      (See above for address)

                                                      Asus Computer International, Inc.
                                                      800 Corporate Way
                                                      Fremont, California 94539
                                                      United States of America

                                                      Representatives:
                                                      John G. Day

Andrew Colin Mayo
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
United States of America
+1 (302) 654-1888
jday@ashby-geddes.com
amayo@ashby-geddes.com

John P. Schnurer
Michael J. Engle
Perkins Coie
11988 El Camino Real Suite 200
San Diego, California 92130-3579
United States of America
+1 (858) 720-5700
+1 (858) 720-5799 (Fax)
jschnurer@perkinscoie.com
mengle@perkinscoie.com

Panasonic Corporation of North America
1 Panasonic Way
Secaucus, New Jersey 07094
United States of America

Representatives:
John G. Day
Andrew Colin Mayo
(See above for address)

Diana M. Szego
Sten A. Jensen
Steven J. Routh
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
United States of America
+1 (202) 339-8400
+1 (202) 339-8500 (Fax)
dszego@orrick.com
sjensen@orrick.com
srouth@orrick.com

Panasonic Corporation

1006 Oaza Kadoma-shi
Kadoma, 571-8501
Japan

Representatives:
John G. Day
Andrew Colin Mayo
(See above for address)

Diana M. Szego
Sten A. Jensen
Steven J. Routh
(See above for address)

Toshiba America Information Systems, Inc.
9740 Irvine Boulevard
Irvine, California 92618
United States of America

Representatives:
Benjamin J. Schladweiler
Seitz Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, Delaware 19801
United States of America
+1 (302) 576-1600
bschladweiler@seitzross.com

Jeffry H. Nelson
Jonathon T. Reavill
Michael J. Shea
Nixon & Vanderhye P.C.
901 North Glebe Road, 11th Floor
Arlington, Virginia 22203
United States of America
+1 (703) 816-4000
+1 (703) 816-4100 (Fax)
jhn@nixonvan.com
jtr@nixonvan.com
mjs@nixonvan.com

Toshiba Corporation
1-1-1 Shibaura, Minato-ku
105-8001 Japan

Representative:

Benjamin J. Schladweiler
(See above for address)

Jeffry H. Nelson
Jonathon T. Reavill
Michael J. Shea
(See above for address)

Vizio, Inc.
39 Tesla
Irvine, California 92618
United States of America

Representatives:
Pilar Gabrielle Kraman
Young, Conaway, Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
United States of America
+1 (302) 576-3586
pkraman@ycst.com

Joseph E. Thomas
William J. Kolegraff
Thomas Whitelaw
18101 Von Karman Avenue, Suite 230
Irvine, California 92612
United States of America
+1 (949) 679-6400
+1 (949) 679-6405 (Fax)
jthomas@twtlaw.com
wkolegraff@twtlaw.com

(c)     *Other parties:*                     None.

7.     *Nature and purpose of the proceedings and summary of the facts:*

I.     Introduction

Plaintiff Graphics Properties Holdings, Inc. ("GPH") filed the above-captioned

civil actions on February 21, 2012 in this Court for the infringement of six United States patents

under United States patent law.  The patents cover certain technologies related to Liquid Crystal

Displays ("LCDs"). LCD's are used in many flat-panel televisions, computer monitors, laptop computers, and tablet computers. GPH alleges the Defendants have infringed and continue to infringe its patents by importing into and selling within the United States products incorporating the patented technology. The Defendants contend they do not infringe GPH's patents.

II.     The Patents in Suit, and the Patents Relevant to this Letter of Request

The LCD panels in the accused products are designed and manufactured by third parties located in China, Hong Kong, Taiwan, South Korea, and Japan. This request seeks specific documents in the People's Republic of China from eighteen (18) such manufacturers that GPH believes have close and direct connections in determining whether Defendants' products are in fact infringing, namely, (1) AU Optronics (Suzhou) Company Limited, (2) AU Optronics (Shanghai) Company Limited, (3) AU Optronics (Xiamen) Company Limited, (4) Innolux Corporation (Nanjing), (5) Innolux Corporation (Shanghai), (6) Innolux Corporation (Ningbo), (7) Innolux Corporation (Nanghai), (8) Suzhou Raken Technology Company Limited, (9) L&T Display Technology (Fujian) Limited, (10) HannStar Display (Nanjing) Corporation, (11) HannSpree Display Technology (Nanjing) Inc., (12) InfoVision Optoelectronics (Kunshan) Company Limited, (13) CPT Display Technology (Shenzhen) Limited, (14) CPT Display Technology (Fujian) Limited, (15) CPT TPV Optical (Fujian) Company Limited, (16) Chunghwa Picture Tubes (Wujiang) Limited, (17) CPTF Visual Display (Fuzhou) Limited, and (18) CPTF Optronics Company Limited (collectively, the "Chinese Entities").

The parties are currently in the process of exchanging documents relevant to this dispute in preparation for trial.

Plaintiff GPH alleges each Defendant has infringed and continues to infringe one or more of six patents under the patent laws of the United States.  This Letter of Request concerns only two (2) of the six patents which relate to the design and construction of LCD panels, structures / layers within the panels, and the manner in which those structures / layers fit together, i.e.:

- United States Patent No. 6,816,145 (the "'145 Patent") entitled "Large Area Wide Aspect Ratio Flat Panel Display Having High Resolution For High Information Content Display" (asserted against each defendant); and

- United States Patent No. 5,896,119 (the "'119 Patent") entitled "Removable Backlighting Assembly for Flat Panel Display Subsystem" (asserted against Asus, Panasonic, Toshiba, and Vizio) (collectively, the "Patents").

For example, the following figure illustrates schematically an example of how layers may be arranged within an LCD panel.



'145 Patent fig. 7.

The following figure illustrates a possible design of the light pipe within an LCD panel.



'119 Patent fig. 14.

### III.    Background of the Disputes in the Civil Actions

GPH alleges the Defendants import into and sell within the United States products including televisions, computer monitors, laptop computers, and tablet computers incorporating LCD panels. As alleged in its complaints, GPH believes that many of these products infringe the Patents. A matter of central dispute in this case is whether the Defendants' accused products in fact practice the inventions claimed in the Patents, thereby infringing same.

Defendants do not design or manufacture the LCD panels in the accused products themselves and have no or limited information on the specific structures of those panels. Instead, the LCD panels used in the accused products are prefabricated panels purchased from panel manufacturers or, alternatively, from companies known as Original Design Manufacturers ("ODMs"), who design and manufacture the accused products for the Defendants, and in turn purchase such prefabricated LCD panels from panel manufacturers—i.e., the Chinese Entities identified above—for use in the accused products. The Defendants and/or their ODMs subsequently integrate the prefabricated LCD panels with other electronic circuitry, software, and components to assemble the accused products. The designers and manufacturers of many of the prefabricated LCD panels used in the accused products are based in China.

8.    *Evidence to be obtained or other judicial act to be performed:*

In view of the above, this Court respectfully requests the competent authorities in People's Republic of China to compel the Chinese Entities to produce specific documents required to resolve the infringement disputes in the subject civil actions, so that the parties in these cases may use the documents to support their respective positions at trial. The documents will be used only in connection with this litigation (a list of the documents requested from each of the eighteen Chinese Entities is attached in Exhibits B-1 through B-17).

Specifically, GPH believes that the documents requested have a direct and close connection with the subject matter of this infringement dispute. This request seeks to obtain blueprints and design documents for specific LCD panels, identified according to the model / part numbers of each of the Chinese Entities, believed to be used in the accused products. The requested blueprints and design documents are those believed to detail (i) the arrangement and mechanical spacing of the layers of material, and (ii) the design of the light pipe or light guide

within each of the specified LCD panels. The documents are relevant to this litigation as GPH believes that they show whether the LCD panels in the Defendants' accused devices in fact practice the inventions claimed in the Patents, which is a matter of central dispute in this litigation. The Defendants acknowledged that they do not have access to these documents, and there appears to be no other way they may be obtained.

The undersigned has reason to believe the Chinese entities possess the requested documents in Exhibits B-1 through B-17. In accordance with the rules of this Court, the Defendants have produced to GPH documents identifying the manufacturer and model number of the LCD panel used in each of the accused products. This request is based upon these disclosures and seeks documents for specific models of LCD panels from the Chinese Entities used in the accused products only. This Court requires assistance in obtaining the blueprints and design documents in China related to specific LCD panels the Chinese Entities manufacture and sell.

The undersigned believes that the above request does not contradict the laws of the People's Republic of China, because it falls within the functions of the judiciary (*see, e.g.*, Articles 64 and 65 of the *PRC Civil Procedure Law*) and does not prejudice the sovereignty, security or social and public interest of China. The competent authorities should be reassured that the execution of this request will not reveal the trade secrets or other confidential information of the Chinese Entities.

Specifically, to address any remote concern of the competent authorities, the undersigned has issued a Protective Order in the civil actions to maintain the confidentiality of any proprietary or sensitive documents that may be produced in this litigation (proposed order attached as Exhibit C). Third parties such as the Chinese Entities may avail themselves of the provisions of this Order

by marking any documents produced with the labels set out in the Order.  For example, under the

Protective Order, any designated protected material will only be disclosed to specific group of

persons (such as outside and in-house counsels of receiving parties, experts, court personnel)

under specific conditions for prosecuting, defending, or attempting to settle the civil actions

(please refer § 7 of the order for further details). The order does not confer any right to other

Chinese Entities or parties in other civil actions to access the protected materials, and the materials

will be stored and maintained in a secure manner ensuring that access to same will be limited to

authorized persons. Because the confidentiality of documents provided by the Chinese Entities

will be protected, this Court believes that the production of same pursuant to this request will not

impair the sovereignty or the security, social or public interest of China, or reveal any trade secrets

or confidential information of the Chinese Entities.

9.    *Identity and address of the entities to be examined:*

　　　　This request seeks production of documents by the following entities:

　　　　(1)    AU Optronics (Suzhou) Company Limited, a PRC subsidiary of AU

Optronics Corporation, having legal representative PENG Shuang Lang (彭双浪) and principal

place of business at:

> No. 398, Su Hong Zhong Road
> Suzhou Industrial Park
> Suzhou, Jiangsu Province, 215021
> China
> (+86) 512-6258-8899
>
> 友达光电(苏州)有限公司
> 中国
> 江苏省苏州市
> 苏州工业园区
> 苏虹中路398号

(2)      AU Optronics (Shanghai) Company Limited (company number

310000400286123), a PRC subsidiary of AU Optronics Corporation, having legal representative

PENG Shuang Lang (彭双浪) and principal place of business at:

> No. 3, Lane 58
> San Zhuang Road
> Songjiang Export Processing Zone
> Shanghai, 201613
> China
> (+86) 21-3781-8800
>
> 友达光电(上海)有限公司
> 中国
> 上海市松江区
> 出口加工区
> 三庄路58弄3号

(3)      AU Optronics (Xiamen) Company Limited (company number

350200400001884), a PRC subsidiary of AU Optronics Corporation, having legal representative

PENG Shuang Lang (彭双浪) and principal place of business at:

> No.1689, Xiang An North Road
> Xiang An Branch
> Torch Hi-tech Industrial Development Zone
> Xiamen, Fujian Province, 361102
> China
> (+86) 592-788-8800
>
> 友达光电(厦门)有限公司
> 中国
> 福建省厦门市
> 翔安区
> 火炬高新区（翔安）产业区
> 翔安北路1689号

(4)     Innolux Corporation (Nanjing), a PRC subsidiary of Innolux Corporation,

having its principal place of business at:

> No. 93, Fu Cheng West Road
> Jiangning Economic and Technical
> Development Zone
> Nanjing, Jiangsu Province
> China
> (+86) 25-5118-1688
>
> 群创光电南京厂区
> 中国
> 江苏省南京市
> 江宁经济开发区
> 佛城西路93号

(5)     Innolux Corporation (Shanghai), a PRC subsidiary of Innolux Corporation,
having its principal place of business at:

> No. 272 Ba Sheng Road
> New Customs
> Wai Gao Qiao Free Trade Zone
> Pudong, Shanghai
> China
> (+86) 21-5048-1188
>
> 群创光电上海厂区
> 中国
> 上海市
> 浦东外高桥保税区新海关
> 巴圣路272号

(6)     Innolux Corporation (Ningbo), a PRC subsidiary of Innolux Corporation,
having its principal place of business at:

> No.16, Yang Zi River North Road
> Ningbo Export Processing Zone
> Ning Bo, Zhejiang Province
> China
> (+86) 574-8686-5999

群创光电宁波
中国
浙江省宁波市
宁波出口加工区
扬子江北路16号

      (7)     Innolux Corporation (Nanhai), a PRC subsidiary of Innolux Corporation, having its principal place of business at:

Xingye North Road
Naihai Science & Technology Industry Garden
Nanhai Foshan, Guangdong Province
China
(+86) 757-8879-9999

群创光电南海
中国
佛山市南海区
南海科技工业园
兴业北路

      (8)     Suzhou Raken Technology Company Limited, a PRC company having

principal place of business at:

No. 278, Mayun Road
Suzhou New District, Suzhou
China
+86-512-6808-8500

苏州乐轩科技有限公司
中国
江苏省苏州市
苏州新区
马运路278号

And a second place of business at:

No. 225, Jin Feng Road,

> Suzhou New District
> Suzhou City, Jiangsu Province
> China
>
> 中国
> 江苏省苏州市
> 高新区
> 金枫路225号

(9)　　L&T Display Technology (Fujian) Limited (company number

350181400003337), a PRC company having legal representative SEONG Deog-ki and principal

place of business at:

> Optoelectronic Park
> Rongqiao Economic and Technological
> Development Zone
> Fuqing City, Fujian Province
> China
> (+86) 591-86515888 / 5861 / 5862
>
> 捷星显示科技(福建)有限公司
> 中国
> 福建省福清市
> 融侨经济技术开发区光电园区

(10)　　HannStar Display (Nanjing) Corporation (company number

320100400015807), a PRC subsidiary of HannStar Display Corporation, having legal

representative JIAO You Qi (焦佑麒) and principal place of business at:

> No.18, Heng Fei Road
> Nanjing Economic & Technology Development
> Zone
> Nanjing, Jiangsu Province
> China
> (+86) 25-8580-3888 / 3808

南京瀚宇彩欣科技有限责任公司
中国
江苏省南京市
南京经济技术开发区
恒飞路18号

(11)    HannSpree Display Technology (Nanjing) Inc. (company number

320100400042741), a PRC subsidiary of HannStar Display Corporation, having legal

representative JIAO You Qi (焦佑麒) and principal place of business at:

No.33, Hengtong Road
Economic & Technology Development Zone
Nanjing, Jiangsu Province,
China
(+86) 25-8580-3888

瀚斯宝丽显示科技（南京）有限公司
中国
江苏省南京市
恒通大道33号

(12)    InfoVision Optoelectronics (Kunshan) Company Limited, a PRC company

having principal place of business at:

No.1, Longteng Road
Kunshan City, Jiangsu Province
China
(+86) 512-5727-8888 / 5721-8813

昆山龙腾光电有限公司
中国
江苏省昆山市
东侧光电产业园
龙腾路1号

(13)    CPT Display Technology (Shenzhen) Limited (company number 440301503329722), a PRC subsidiary of Chunghwa Picture Tubes Limited, having legal representative XU Yi Cai (许翼材) and principal place of business at:

> No. 9 Tangming Road
> Guang-Ming Hi-tech Industrial Park
> Baoan District
> Shenzhen, Guangdong Province
> China
> (+86) 755-8885-6789
>
> 深圳华映显示科技有限公司
> 中国
> 广东省深圳市
> 宝安区
> 光明高新技术产业园区
> 塘明大道9号

(14)    CPT Display Technology (Fujian) Limited (company number 350100400010845), a PRC subsidiary of Chunghwa Picture Tubes Limited, having legal representative TANG Yuan Sheng (唐远生) and principal place of business at:

> No. 6, Rujiang West Road
> Mawei Hi-tech Development Zone
> Fuzhou City, Fujian Province
> China
> (+86) 591-8397-1357
>
> 福建华映显示科技有限公司
> 中国
> 福建省福州市
> 马尾科技园区
> 儒江西路6号

(15)    CPT TPV Optical (Fujian) Company Limited (company number 350000400000018), a PRC subsidiary of Chunghwa Picture Tubes Limited, having legal representative WU Bing Chang (吴炳昌) and principal place of business at:

> Shangzheng, Yuanhong Road
> Rongqiao Economic and Technological
> Development Zone
> Fuqing City, Fujian Province
> China
> (+86) 591-2838-8888
>
> 福建华冠光电有限公司
> 中国
> 福建省福清市
> 融侨经济技术开发区
> 元洪路上郑

(16)    Chunghwa Picture Tubes (Wujiang) Limited, a PRC subsidiary of Chunghwa Picture Tubes Limited, having principal place of business at:

> No.88, Jiang Xing East Road
> Wujiang Economic Technology Development
> Zone
> Suzhou City, Jiangsu Province
> China
> (+86) 512-6340-6789
>
> 华映视讯（吴江）有限公司
> 中国
> 江苏省苏州市
> 吴江经济开发区
> 江兴东路88号

(17)    CPTF Visual Display (Fuzhou) Limited (company number 350100400005174) and (18) CPTF Optronics Company Limited (company number

350000400000430), PRC subsidiaries of Chunghwa Picture Tubes Limited, having legal representatives XU Yi Cai (许翼材) and KANG Guo Cai (康国财) respectively, and principal place of business at:

> No. 1, Xin Ye Road
> Mawei Hi-tech Development Zone
> Fuzhou City, Fujian Province
> China
> (+86) 591-8397-1357
>
> 福州华映视讯有限公司
> 中国
> 福建省福州市
> 马尾科技园区
> 兴业路1号

10.    *Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined:*

> Not applicable.

11.    *Documents or other property to be obtained:*

> Please see Exhibits B-1 through B-17.

12.    *Any requirement that the evidence be given on oath or affirmation and any special form to be used:*

> None.

13.    *Special methods or procedure to be followed:*

> Pursuant to Article 9 of the Convention (and as adopted in Article 279 of the *PRC Civil Procedure Law*), the Requesting Court respectfully requests the judicial assistance to be conducted in the following method or procedure:

The competent authorities are requested to visit the addresses of the eighteen Chinese Entities provided above and demand each entity to produce each document listed on the one of Exhibits B-1 through B-17 that corresponds to the Chinese Entity. The documents produced should be in printed copy, and should be accompanied by an electronic copy if available (and if a printed copy cannot be produced). For Chinese Entities where one or more addresses are presented above, the competent authorities shall visit all of the addresses.

Further, to ensure that the correct documents are produced in a timely manner while reducing the burden on the authority executing this request, the undersigned requests that prior notice of any visit to a Chinese Entity should be given to designated representatives of the parties, and any such party, with the permission of the Competent Authority, should be allowed to be present (the names and contact information of the representatives designated by the Plaintiff are set out in paragraph 14 below).

If the above method requested is not permitted by the laws of the People's Republic of China, the competent authorities may collect the documents listed on one of Exhibits B-1 through B-17 in accordance with the procedure stipulated by the relevant civil procedural laws of China.

Pursuant to the protective order issued by this Court and attached as Exhibit C, the Chinese Entities can mark any documents they produce according to the Protective Order in this case. The provisions of the Protective Order are enforceable in this Court.

14.    *Request for notification of the time and place for the execution of the request and identity and address of any person to be notified:*

Lewis Ho

Monique Lee
Dechert
27/F Henley Building, 5 Queen's Road
Central, Hong Kong
Hong Kong
+852 3518 4705 / 4709
+852 3518 4777 (Fax)
lewis.ho@dechert.com
monique.lee@dechert.com

15.    *Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request:*

None.

16.    *Specification of privilege or duty to refuse to give evidence under the law of the State of origin:*

An entity may refuse to produce a document if such production would disclose a confidential communication between it and its attorney. The entity should provide a log of all such privileged material withheld to GPH or its representatives.

17.    *The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:*

Graphics Properties Holdings, Inc.
56 Harrison Street, Suite 505
New Rochelle, New York 10801
United States of America

18.    *Date of Request:*            _____, 2013

19.    *Signature and seal of the requesting authority:*


_____
Leonard P. Stark, J.

## Appendix A

Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (in English and Chinese)



## 20. CONVENTION ON THE TAKING OF EVIDENCE
## ABROAD IN CIVIL OR COMMERCIAL MATTERS[1]

*(Concluded 18 March 1970)*

The States signatory to the present Convention,

Desiring to facilitate the transmission and execution of Letters of Request and to further the accommodation of the different methods which they use for this purpose,

Desiring to improve mutual judicial co-operation in civil or commercial matters,

Have resolved to conclude a Convention to this effect and have agreed upon the following provisions –

CHAPTER I – LETTERS OF REQUEST

### Article 1

In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act.

A Letter shall not be used to obtain evidence which is not intended for use in judicial proceedings, commenced or contemplated.

The expression "other judicial act" does not cover the service of judicial documents or the issuance of any process by which judgments or orders are executed or enforced, or orders for provisional or protective measures.

### Article 2

A Contracting State shall designate a Central Authority which will undertake to receive Letters of Request coming from a judicial authority of another Contracting State and to transmit them to the authority competent to execute them. Each State shall organise the Central Authority in accordance with its own law.

Letters shall be sent to the Central Authority of the State of execution without being transmitted through any other authority of that State.

### Article 3

A Letter of Request shall specify –

a) the authority requesting its execution and the authority requested to execute it, if known to the requesting authority;

b) the names and addresses of the parties to the proceedings and their representatives, if any;

c) the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto;

d) the evidence to be obtained or other judicial act to be performed.

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Evidence Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Onzième session (1968)*, Tome IV, *Obtention des preuves* (219 pp.).

Where appropriate, the Letter shall specify, *inter alia* –

e)    the names and addresses of the persons to be examined;
f)    the questions to be put to the persons to be examined or a statement of the subject-matter about which they are to be examined;
g)    the documents or other property, real or personal, to be inspected;
h)    any requirement that the evidence is to be given on oath or affirmation, and any special form to be used;
i)    any special method or procedure to be followed under Article 9.

A Letter may also mention any information necessary for the application of Article 11.
No legalisation or other like formality may be required.

### Article 4

A Letter of Request shall be in the language of the authority requested to execute it or be accompanied by a translation into that language.
Nevertheless, a Contracting State shall accept a Letter in either English or French, or a translation into one of these languages, unless it has made the reservation authorised by Article 33.
A Contracting State which has more than one official language and cannot, for reasons of internal law, accept Letters in one of these languages for the whole of its territory, shall, by declaration, specify the language in which the Letter or translation thereof shall be expressed for execution in the specified parts of its territory. In case of failure to comply with this declaration, without justifiable excuse, the costs of translation into the required language shall be borne by the State of origin.
A Contracting State may, by declaration, specify the language or languages other than those referred to in the preceding paragraphs, in which a Letter may be sent to its Central Authority.
Any translation accompanying a Letter shall be certified as correct, either by a diplomatic officer or consular agent or by a sworn translator or by any other person so authorised in either State.

### Article 5

If the Central Authority considers that the request does not comply with the provisions of the present Convention, it shall promptly inform the authority of the State of origin which transmitted the Letter of Request, specifying the objections to the Letter.

### Article 6

If the authority to whom a Letter of Request has been transmitted is not competent to execute it, the Letter shall be sent forthwith to the authority in the same State which is competent to execute it in accordance with the provisions of its own law.

### Article 7

The requesting authority shall, if it so desires, be informed of the time when, and the place where, the proceedings will take place, in order that the parties concerned, and their representatives, if any, may be present. This information shall be sent directly to the parties or their representatives when the authority of the State of origin so requests.

### Article 8

A Contracting State may declare that members of the judicial personnel of the requesting authority of another Contracting State may be present at the execution of a Letter of Request. Prior authorisation by the competent authority designated by the declaring State may be required.

### Article 9

The judicial authority which executes a Letter of Request shall apply its own law as to the methods and procedures to be followed.

However, it will follow a request of the requesting authority that a special method or procedure be followed, unless this is incompatible with the internal law of the State of execution or is impossible of performance by reason of its internal practice and procedure or by reason of practical difficulties.
A Letter of Request shall be executed expeditiously.

## Article 10

In executing a Letter of Request the requested authority shall apply the appropriate measures of compulsion in the instances and to the same extent as are provided by its internal law for the execution of orders issued by the authorities of its own country or of requests made by parties in internal proceedings.

## Article 11

In the execution of a Letter of Request the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence –
a)    under the law of the State of execution; or
b)    under the law of the State of origin, and the privilege or duty has been specified in the Letter, or, at the instance of the requested authority, has been otherwise confirmed to that authority by the requesting authority.

A Contracting State may declare that, in addition, it will respect privileges and duties existing under the law of States other than the State of origin and the State of execution, to the extent specified in that declaration.

## Article 12

The execution of a Letter of Request may be refused only to the extent that –
a)    in the State of execution the execution of the Letter does not fall within the functions of the judiciary; or
b)    the State addressed considers that its sovereignty or security would be prejudiced thereby.

Execution may not be refused solely on the ground that under its internal law the State of execution claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not admit a right of action on it.

## Article 13

The documents establishing the execution of the Letter of Request shall be sent by the requested authority to the requesting authority by the same channel which was used by the latter.
In every instance where the Letter is not executed in whole or in part, the requesting authority shall be informed immediately through the same channel and advised of the reasons.

## Article 14

The execution of the Letter of Request shall not give rise to any reimbursement of taxes or costs of any nature.
Nevertheless, the State of execution has the right to require the State of origin to reimburse the fees paid to experts and interpreters and the costs occasioned by the use of a special procedure requested by the State of origin under Article 9, paragraph 2.
The requested authority whose law obliges the parties themselves to secure evidence, and which is not able itself to execute the Letter, may, after having obtained the consent of the requesting authority, appoint a suitable person to do so. When seeking this consent the requested authority shall indicate the approximate costs which would result from this procedure. If the requesting authority gives its consent it shall reimburse any costs incurred; without such consent the requesting authority shall not be liable for the costs.

CHAPTER II – TAKING OF EVIDENCE BY DIPLOMATIC OFFICERS, CONSULAR AGENTS AND COMMISSIONERS

## Article 15

In a civil or commercial matter, a diplomatic officer or consular agent of a Contracting State may, in the territory of another Contracting State and within the area where he exercises his functions, take the evidence without compulsion of nationals of a State which he represents in aid of proceedings commenced in the courts of a State which he represents.

A Contracting State may declare that evidence may be taken by a diplomatic officer or consular agent only if permission to that effect is given upon application made by him or on his behalf to the appropriate authority designated by the declaring State.

## Article 16

A diplomatic officer or consular agent of a Contracting State may, in the territory of another Contracting State and within the area where he exercises his functions, also take the evidence, without compulsion, of nationals of the State in which he exercises his functions or of a third State, in aid of proceedings commenced in the courts of a State which he represents, if –

a)    a competent authority designated by the State in which he exercises his functions has given its permission either generally or in the particular case, and

b)    he complies with the conditions which the competent authority has specified in the permission.

A Contracting State may declare that evidence may be taken under this Article without its prior permission.

## Article 17

In a civil or commercial matter, a person duly appointed as a commissioner for the purpose may, without compulsion, take evidence in the territory of a Contracting State in aid of proceedings commenced in the courts of another Contracting State if –

a)    a competent authority designated by the State where the evidence is to be taken has given its permission either generally or in the particular case; and

b)    he complies with the conditions which the competent authority has specified in the permission.

A Contracting State may declare that evidence may be taken under this Article without its prior permission.

## Article 18

A Contracting State may declare that a diplomatic officer, consular agent or commissioner authorised to take evidence under Articles 15, 16 or 17, may apply to the competent authority designated by the declaring State for appropriate assistance to obtain the evidence by compulsion. The declaration may contain such conditions as the declaring State may see fit to impose.

If the authority grants the application it shall apply any measures of compulsion which are appropriate and are prescribed by its law for use in internal proceedings.

## Article 19

The competent authority, in giving the permission referred to in Articles 15, 16 or 17, or in granting the application referred to in Article 18, may lay down such conditions as it deems fit, *inter alia*, as to the time and place of the taking of the evidence. Similarly it may require that it be given reasonable advance notice of the time, date and place of the taking of the evidence; in such a case a representative of the authority shall be entitled to be present at the taking of the evidence.

## Article 20

In the taking of evidence under any Article of this Chapter persons concerned may be legally represented.

## Article 21

Where a diplomatic officer, consular agent or commissioner is authorised under Articles 15, 16 or 17 to take evidence —

a)   he may take all kinds of evidence which are not incompatible with the law of the State where the evidence is taken or contrary to any permission granted pursuant to the above Articles, and shall have power within such limits to administer an oath or take an affirmation;

b)   a request to a person to appear or to give evidence shall, unless the recipient is a national of the State where the action is pending, be drawn up in the language of the place where the evidence is taken or be accompanied by a translation into such language;

c)   the request shall inform the person that he may be legally represented and, in any State that has not filed a declaration under Article 18, shall also inform him that he is not compelled to appear or to give evidence;

d)   the evidence may be taken in the manner provided by the law applicable to the court in which the action is pending provided that such manner is not forbidden by the law of the State where the evidence is taken;

e)   a person requested to give evidence may invoke the privileges and duties to refuse to give the evidence contained in Article 11.

## Article 22

The fact that an attempt to take evidence under the procedure laid down in this Chapter has failed, owing to the refusal of a person to give evidence, shall not prevent an application being subsequently made to take the evidence in accordance with Chapter I.

## CHAPTER III — GENERAL CLAUSES

## Article 23

A Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries.

## Article 24

A Contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence. However, Letters of Request may in all cases be sent to the Central Authority.

Federal States shall be free to designate more than one Central Authority.

## Article 25

A Contracting State which has more than one legal system may designate the authorities of one of such systems, which shall have exclusive competence to execute Letters of Request pursuant to this Convention.

## Article 26

A Contracting State, if required to do so because of constitutional limitations, may request the reimbursement by the State of origin of fees and costs, in connection with the execution of Letters of

Request, for the service of process necessary to compel the appearance of a person to give evidence, the costs of attendance of such persons, and the cost of any transcript of the evidence.

Where a State has made a request pursuant to the above paragraph, any other Contracting State may request from that State the reimbursement of similar fees and costs.

### Article 27

The provisions of the present Convention shall not prevent a Contracting State from –

a) declaring that Letters of Request may be transmitted to its judicial authorities through channels other than those provided for in Article 2;

b) permitting, by internal law or practice, any act provided for in this Convention to be performed upon less restrictive conditions;

c) permitting, by internal law or practice, methods of taking evidence other than those provided for in this Convention.

### Article 28

The present Convention shall not prevent an agreement between any two or more Contracting States to derogate from –

a) the provisions of Article 2 with respect to methods of transmitting Letters of Request;

b) the provisions of Article 4 with respect to the languages which may be used;

c) the provisions of Article 8 with respect to the presence of judicial personnel at the execution of Letters;

d) the provisions of Article 11 with respect to the privileges and duties of witnesses to refuse to give evidence;

e) the provisions of Article 13 with respect to the methods of returning executed Letters to the requesting authority;

f) the provisions of Article 14 with respect to fees and costs;

g) the provisions of Chapter II.

### Article 29

Between Parties to the present Convention who are also Parties to one or both of the Conventions on Civil Procedure signed at The Hague on the 17th of July 1905 and the 1st of March 1954, this Convention shall replace Articles 8-16 of the earlier Conventions.

### Article 30

The present Convention shall not affect the application of Article 23 of the Convention of 1905, or of Article 24 of the Convention of 1954.

### Article 31

Supplementary Agreements between Parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention unless the Parties have otherwise agreed.

### Article 32

Without prejudice to the provisions of Articles 29 and 31, the present Convention shall not derogate from conventions containing provisions on the matters covered by this Convention to which the Contracting States are, or shall become Parties.

Article 33

A State may, at the time of signature, ratification or accession exclude, in whole or in part, the application of the provisions of paragraph 2 of Article 4 and of Chapter II. No other reservation shall be permitted.
Each Contracting State may at any time withdraw a reservation it has made; the reservation shall cease to have effect on the sixtieth day after notification of the withdrawal.
When a State has made a reservation, any other State affected thereby may apply the same rule against the reserving State.

Article 34

A State may at any time withdraw or modify a declaration.

Article 35

A Contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the designation of authorities, pursuant to Articles 2, 8, 24 and 25.
A Contracting State shall likewise inform the Ministry, where appropriate, of the following --
a)   the designation of the authorities to whom notice must be given, whose permission may be required, and whose assistance may be invoked in the taking of evidence by diplomatic officers and consular agents, pursuant to Articles 15, 16 and 18 respectively;
b)   the designation of the authorities whose permission may be required in the taking of evidence by commissioners pursuant to Article 17 and of those who may grant the assistance provided for in Article 18;
c)   declarations pursuant to Articles 4, 8, 11, 15, 16, 17, 18, 23 and 27;
d)   any withdrawal or modification of the above designations and declarations;
e)   the withdrawal of any reservation.

Article 36

Any difficulties which may arise between Contracting States in connection with the operation of this Convention shall be settled through diplomatic channels.

Article 37

The present Convention shall be open for signature by the States represented at the Eleventh Session of the Hague Conference on Private International Law.
It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

Article 38

The present Convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of Article 37.
The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

Article 39

Any State not represented at the Eleventh Session of the Hague Conference on Private International Law which is a Member of this Conference or of the United Nations or of a specialised agency of that Organisation, or a Party to the Statute of the International Court of Justice may accede to the present Convention after it has entered into force in accordance with the first paragraph of Article 38.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for a State acceding to it on the sixtieth day after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the sixtieth day after the deposit of the declaration of acceptance.

### Article 40

Any State may, at the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for the territories mentioned in such an extension on the sixtieth day after the notification indicated in the preceding paragraph.

### Article 41

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 38, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

### Article 42

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in Article 37, and to the States which have acceded in accordance with Article 39, of the following –

a)  the signatures and ratifications referred to in Article 37;
b)  the date on which the present Convention enters into force in accordance with the first paragraph of Article 38;
c)  the accessions referred to in Article 39 and the dates on which they take effect;
d)  the extensions referred to in Article 40 and the dates on which they take effect;
e)  the designations, reservations and declarations referred to in Articles 33 and 35;
f)  the denunciations referred to in the third paragraph of Article 41.

In witness whereof the undersigned, being duly authorised thereto, have signed the present Convention.

Done at The Hague, on the 18th day of March, 1970, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the diplomatic channel, to each of the States represented at the Eleventh Session of the Hague Conference on Private International Law.

# 20：关于从国外调取民事或
# 商事证据的公约①

本公约签字国，

希望便利请求书的转递和执行，并促进他们为此目的而采取的不同方法的协调，

希望增进相互间在民事或商事方面的司法合作，

为此目的，兹决定缔结一项公约，并议定下列各条：

## 第一章 请 求 书

第一条 在民事或商事案件中，每一缔约国的司法机关可以根据该国的法律规定，通过请求书的方式，请求另一缔约国主管机关调取证据或履行某些其他司法行为。

请求书不得用来调取不打算用于已经开始或即将开始的司法程序的证据。

"其他司法行为"一词不包括司法文书的送达或颁发执行判决或裁定的任何决定，或采取临时措施或保全措施的命令。

第二条 每一缔约国应指定一个中央机关负责接收来自另一缔约国司法机关的请求书，并将其转交给执行请求的主管机关。各缔约国应依其本国法律组建该中央机关。

请求书应直接送交执行国中央机关，无需通过该国任何其他机关转交。

第三条 请求书应载明：

（一）请求执行的机关，以及如果请求机关知道，被请求执行的机关；

（二）诉讼当事人的姓名和地址，以及如有的话，他们的代理人的姓名和地址；

---

① 本公约于1970年3月18日订于海牙，于1972年10月7日生效。缔约国(54)：阿尔巴尼亚、阿根廷、澳大利亚、白俄罗斯、波黑、保加利亚、中国(包括香港特别行政区和澳门特别行政区)、克罗地亚、塞浦路斯、捷克、丹麦、爱沙尼亚、芬兰、法国、德国、希腊、匈牙利、冰岛、印度、以色列、意大利、韩国、拉脱维亚、立陶宛、卢森堡、马耳他、墨西哥、摩纳哥、摩洛哥、荷兰、挪威、波兰、葡萄牙、罗马尼亚、俄罗斯、塞尔维亚、斯洛伐克、斯洛文尼亚、南非、西班牙、斯里兰卡、瑞典、瑞士、马其顿、土耳其、乌克兰、英国、美国、委内瑞拉、巴巴多斯、科威特、列支敦士登、塞舌尔、新加坡。我国于1997年7月3日决定加入本公约。

（三）需要证据的诉讼的性质，及有关的一切必要资料；

（四）需要调取的证据或需履行的其他司法行为。

必要时，请求书还应特别载明：

（五）需询问的人的姓名和地址；

（六）需向被询问人提出的问题或对需询问的事项的说明；

（七）需检查的文书或其他财产，包括不动产或动产；

（八）证据需经宣誓或确认的任何要求，以及应使用的任何特殊格式；

（九）依公约第九条需采用的任何特殊方式或程序。

请求书还可以载明为适用第十一条所需的任何资料。

不得要求认证或其他类似手续。

第四条　请求书应以被请求执行机关的文字作成或附该种文字的译文。

但是，除非缔约国已根据第三十三条提出保留，缔约国应该接受以英文或法文作成或附其中任何一种文字译文的请求书。

具有多种官方文字并且因国内法原因不能在其全部领土内接受由其中一种文字作成的请求书的缔约国，应通过声明方式指明请求书在其领土的特定部分内执行时应使用的文字或译文。如无正当理由而未能遵守这一声明，译成所需文字的费用由请求国负担。

每一缔约国可用声明方式指明除上述各款规定的文字以外，送交其中央机关的请求书可以使用的其他文字。

请求书所附的任何译文应经外交官员、领事代表或经宣誓的译员或经两国中的一国授权的任何其他人员证明无误。

第五条　如果中央机关认为请求书不符合本公约的规定，应立即通知向其送交请求书的请求国机关，指明对该请求书的异议。

第六条　如被送交请求书的机关无权执行请求，应将请求书及时转交根据其国内法律规定有权执行的本国其他机关。

第七条　如请求机关提出请求，应将进行司法程序的时间和地点通知该机关，以便有关当事人和他们已有的代理人能够出席。如果请求机关提出请求，上述通知应直接送交当事人或他们的代理人。

第八条　缔约国可以声明，在执行请求时，允许另一缔约国请求机关的司法人员出席。对此，声明国可要求事先取得其指定的主管机关的授权。

第九条　执行请求书的司法机关应适用其本国法规定的方式和程序。

但是，该机关应采纳请求机关提出的采用特殊方式或程序的请求，除非其与执行国国内法相抵触或因其国内惯例和程序或存在实际困难而不可能执行。

请求书应迅速执行。

第十条　在执行请求时,被请求机关应在其国内法为执行本国机关的决定或本国诉讼中当事人的请求而规定的相同的情况和范围内,采取适当的强制措施。

第十一条　在请求书的执行过程中,在下列情况下有拒绝作证的特权或义务的有关人员,可以拒绝提供证据:

(一)根据执行国法律;或

(二)根据请求国法律,并且该项特权或义务已在请求书中列明,或应被请求机关的要求,已经请求机关另行确认。

此外,缔约国可以声明在声明指定的范围内,尊重请求国和执行国以外的其他国家法律规定的特权或义务。

第十二条　只有在下列情况下,才能拒绝执行请求书:

(一)在执行国,该请求书的执行不属于司法机关的职权范围;或

(二)被请求国认为,请求书的执行将会损害其主权和安全。

执行国不能仅因其国内法已对该项诉讼标的规定专属管辖权或不承认对该事项提起诉讼的权利为理由,拒绝执行请求。

第十三条　证明执行请求书的文书应由被请求机关采用与请求机关所采用的相同途径送交请求机关。

在请求书全部或部分未能执行的情况下,应通过相同途径及时通知请求机关,并说明原因。

第十四条　请求书的执行不产生任何性质的税费补偿。

但是,执行国有权要求请求国偿付支付给鉴定人和译员的费用和因采用请求国根据第九条第二款要求采用的特殊程序而产生的费用。

如果被请求国法律规定当事人有义务收集证据,并且被请求机关不能亲自执行请求书,在征得请求机关的同意后,被请求机关可以指定一位适当的人员执行。在征求此种同意时,被请求机关应说明采用这一程序所产生的大致费用。如果请求机关表示同意,则应偿付由此产生的任何费用;否则请求机关对该费用不承担责任。

## 第二章　外交官员、领事代表和特派员取证

第十五条　在民事或商事案件中,每一缔约国的外交官员或领事代表在另一缔约国境内其执行职务的区域内,可以向他所代表的国家的国民在不采取强制措施的情况下调取证据,以协助在其代表的国家的法院中进行的诉讼。

缔约国可以声明,外交官员和领事代表只有在自己或其代表向声明国指定的适当机关递交了申请并获得允许后才能调取证据。

第十六条　在符合下列条件的情况下，每一缔约国的外交官员或领事代表在另一缔约国境内其执行职务的区域内，亦可以向他执行职务地所在国或第三国国民在不采取强制措施的情况下调取据据，以协助在其代表的国家的法院中进行的诉讼：

（一）他执行职务地所在国指定的主管机关已给予一般性或对特定案件的许可，并且

（二）他遵守主管机关在许可中设定的条件。

缔约国可以声明，无须取得事先许可即可依本条进行取证。

第十七条　在符合下列条件的情况下，在民事或商事案件中，被正式指派的特派员可以在不采取强制措施的情况下在一缔约国境内调取证据，以协助在另一缔约国法院中正在进行的诉讼：

（一）取证地国指定的主管机关已给予一般性或对特定案件的许可；并且

（二）他遵守主管机关在许可中设定的条件。

缔约国可以声明在无事先许可的情况下依本条进行取证。

第十八条　缔约国可以声明，根据第十五条、第十六条、第十七条被授权调取证据的外交官员、领事代表或特派员可以申请声明国指定的主管机关采取强制措施，对取证予以适当协助。声明可包含声明国认为合适的条件。

如果主管机关同意该项申请，则应采取其国内法规定的适用于国内诉讼程序的一切合适的强制措施。

第十九条　主管机关在给予第十五条、第十六条或第十七条所指的许可或同意第十八条所指的申请时，可规定其认为合适的条件，特别是调取证据的时间和地点。同时，它可以要求得到有关取证的时间、日期和地点的合理的事先通知。在这种情况下，该机关的代表有权在取证时出席。

第二十条　根据本章各条取证时，有关人员可以得到合法代理。

第二十一条　如果外交官员、领事代表或特派员根据第十五条、第十六条或第十七条有权调取证据：

（一）他可以调取与取证地国法律不相抵触并不违背根据上述各条给予的任何许可的各种证据，并有权在上述限度内主持宣誓或接受确认；

（二）要求某人出庭或提供证据的请求应用取证地国文字作成或附有取证地国文字的译文，除非该人为诉讼进行地国国民；

（三）请求中应通知该人，他可得到合法代理；在未根据第十八条提出声明的国家，还应通知该人他的出庭或提供证据不受强制；

（四）如果取证地国法律未禁止，可以依受理诉讼的法院所适用的法律中规定的方式调取证据；

（五）被请求提供证据的人员可以引用第十一条规定的特权和义务拒绝提供证据。

第二十二条　因为某人拒绝提供证据而未能依本章规定的程序取证的事实不妨碍随后根据第一章提出取证申请。

## 第三章　一般条款

第二十三条　缔约国可在签署、批准或加入时声明，不执行普通法国家的旨在进行审判前文件调查的请求书。

第二十四条　缔约国可以指定除中央机关以外的其他机关，并应决定它们的职权范围。但是在任何情况下，都可以向中央机关送交请求书。

联邦国家有权指定一个以上的中央机关。

第二十五条　有多种法律制度的缔约国可以指定其中一种制度内的机关具有执行根据本公约提出的请求书的专属权利。

第二十六条　如果因为宪法的限制，缔约国可以要求请求国偿付与执行请求书有关的送达强制某人出庭提供证据的传票的费用，该人出庭的费用，以及制作询问笔录的费用。

如果一国根据前款提出请求，任何其他缔约国可要求该国偿付同类费用。

第二十七条　本公约的规定不妨碍缔约国：

（一）声明可以通过第二条规定的途径以外的途径将请求书送交其司法机关；

（二）根据其国内法律或惯例，允许在更少限制的情况下实行本公约所规定的行为；

（三）根据其国内法律或惯例，允许以本公约规定以外的方式调取证据。

第二十八条　本公约不妨碍任何两个或两个以上的缔约国缔结协定排除下列条款的适用：

（一）第二条有关送交请求书方式的规定；

（二）第四条有关使用文字的规定；

（三）第八条有关在执行请求书时司法机关人员出席的规定；

（四）第十一条有关证人拒绝作证的特权和义务的规定；

（五）第十三条有关将执行请求书的文书送回请求机关的方式的规定；

（六）第十四条有关费用的规定；

（七）第二章的规定。

第二十九条　在同为 1905 年 7 月 17 日或 1954 年 3 月 1 日在海牙签订的两个《民事诉讼程序公约》或其中之一的当事国的本公约当事国之间，本公约

取代上述两公约第八条至第十六条的规定。

第三十条　本公约不影响 1905 年公约第二十三条或 1954 年公约第二十四条规定的适用。

第三十一条　1905 年和 1954 年公约当事国之间的补充协定应被认为同样适用于本公约，除非当事国之间另有约定。

第三十二条　在不影响本公约第二十九条和第三十一条规定的前提下，本公约不影响缔约国已经或即将成为当事国的包含本公约事项的其他公约的适用。

第三十三条　一国可在签署、批准或加入公约时，部分或全部排除第四条第二款和第二章的规定的适用。不允许作其他保留。

缔约国可随时撤回其保留；保留自撤回通知后第六十日起失去效力。

如果一国作出保留，受其影响的任何其他国家可以对保留国适用相同的规则。

第三十四条　缔约国可随时撤销或更改其声明。

第三十五条　缔约国应在交存批准书或加入书时或其后，将根据第二条、第八条、第二十四条和第二十五条指定的机关通知荷兰外交部。

缔约国还应在适当时通知荷兰外交部：

（一）根据第十五条、第十六条和第十八条的相关规定外交官员或领事代表调取证据时应向其递交通知、获取许可、请求协助的机关的指定；

（二）根据第十七条特派员取证时应获其许可和根据第十八条提供协助的机关的指定；

（三）根据第四条、第八条、第十一条、第十五条、第十六条、第十七条、第十八条、第二十三条和第二十五条所作的声明；

（四）任何对上述指定或声明的撤销或更改；

（五）保留的撤回。

第三十六条　缔约国之间因实施本公约产生的任何困难应通过外交途径解决。

第三十七条　本公约应对出席海牙国际私法会议第十一次会议的国家开放签署。

本公约需经批准。批准书应交存荷兰外交部。

第三十八条　本公约自第三十七条第二款所指的第三份批准书交存后第 60 日起生效。

对于此后批准公约的签署国，公约自该国交存批准书后第 60 日起生效。

第三十九条　任何未出席第十一次海牙国际私法会议的海牙国际私法会

议的成员国、联合国或该组织专门机构的成员国、或国际法院规约当事国可在公约根据第三十八条第一款生效后加入本公约。

加入书应交存荷兰外交部。

自交存加入书后第 60 日起公约对该加入国生效。

加入行为只在加入国和已声明接受该国加入的公约缔约国之间的关系方面发生效力。上述声明应交存荷兰外交部；荷兰外交部应将经证明的副本通过外交途径转送各缔约国。

本公约自加入国和接受该国加入的国家之间自交存接受声明后第 60 日起生效。

第四十条　任何国家可在签署、批准或加入公约时声明，本公约扩展适用于该国负责其国际关系的全部领域或其中一个或几个部分。此项声明自本公约对有关国家生效之日起生效。

此后任一时间的上述扩展适用均应通知荷兰外交部。

本公约自前款所指的通知后第 60 日起对声明所提及的领域生效。

第四十一条　本公约自根据公约第三十八条第一款生效后 5 年内有效，对后来批准或加入本公约的国家同样如此。

如未经退出，本公约每 5 年自动延续一次。

退出应最迟于 5 年期满前 6 个月通知荷兰外交部。

退出可仅限于公约适用的特定区域。

退出仅对通知退出的国家有效。公约对其他缔约国仍然有效。

第四十二条　荷兰外交部应将下列事项通知第三十七条所指的国家和根据第三十九条加入的国家：

（一）第三十七条所指的签署和批准；

（二）公约根据第三十八条第一款生效的日期；

（三）第三十九条所指的加入及其生效日期；

（四）第四十条所指的扩展及其生效日期；

（五）根据第三十三条和第三十五条所作的指定、保留和声明；

（六）第四十一条第三款所指的退出。

下列经正式授权的签署人签署本公约，以昭信守。

1970 年 3 月 18 日订于海牙，用英文和法文写成，两种文本同等作准。正本一份，存放于荷兰政府档案库，其经证明无误的副本应通过外交途径送交出席海牙国际私法会议第十一次会议的国家。

Appendix B-1

Documents requested from AU Optronics (Suzhou) Company Limited

Please provide the blueprints and design documents for the following specific LCD panels
(identified by your model number) that detail (i) the arrangement and mechanical spacing of the
layers of material in the panel and (ii) the design of the light pipe or light guide within the specified
LCD panel:

1. B101EVN06.0 00
2. B101EVT03.0
3. B101EVT04.0
4. B101EW05
5. B101EW05 0A
6. B101EW05 V1
7. B101EW05 V3
8. B101UAN02.1
9. B101UAT02.2
10. B101UAT02.2 H/W: 1A
11. B101UAT02.2 H/W: 2A
12. B116HAN03.0
13. B116XTN04.0
14. B116XW02 V0 (H/W:1A)/SZ
15. B116XW03
16. B125XW01 V0 (H/W:3A)
17. B133HAN03.0
18. B133XTF01.2
19. B133XTF01.3
20. B133XTF01.4
21. B133XTN01.2
22. B133XW01 V0 (LED)
23. B133XW03
24. B133XW03 V0 (H/W:EA)
25. B133XW03 V4 (H/W:0A)
26. B133XW03 V4 (OPENCELL)
27. B140XTN01.3 (H/W:0A)
28. B140XTN02.4
29. B140XW01
30. B140XW01 V0 (H/W:0A) OMEGA
31. B140XW01 V1 (H/W:8A)

32. B140XW01 V8 (H/W:5A)
33. B140XW02 V1 (0A) LED
34. B140XW03
35. B140XW04
36. B156HW01 V5 (H/W:0A)
37. B156XTN01.0
38. B156XTN02.2
39. B156XTN02.3
40. B156XTN02.4 (HW:0A)
41. B156XTN03.1
42. B156XW02
43. B156XW02 V2 (H/W:4A)
44. B156XW02 V3 (H/W:4A)
45. B156XW02 V6 (H/W:0A)
46. B156XW02 V6 (H/W:0A) OMEGA
47. B156XW02 V6 (H/W:0A)/HOLDER
48. B156XW02 V6 (H/W:0A)/TAPE
49. B156XW02 V7 (H/W:0A)
50. B156XW03 V0 (LED)
51. B156XW04
52. B156XW04 V5 (H/W:0A)
53. B173RW01 V0 (H/W:1A) (LED)
54. B173RW01 V0 (H/W:1A) OMEGA
55. B173RW01 V2 (H/W:5A)
56. B173RW01 V3 (H/W:5A)
57. B173RW01-V3
58. B173RW01-V5
59. M185XTN01.0 00-S03
60. M185XTN01.0 0A-Z31
61. M185XW01 VD 0A-S03
62. M200RTN01.0
63. M200RW01 V6
64. M215HW01
65. M215HW01 VB 0A-S11
66. M240HW01 v.DQ0 01
67. M240HW01 V6
68. M240HW01 VB 00-S11
69. M240HW01 VB 0A-S11
70. M240HW01 VD
71. M240HW01 VE
72. M240HW01-VD
73. M240HW-01-VD
74. M240HW02 V1 00-S11
75. M240HW02 V6
76. M240HW02-V6

77. M240Q01 VBQ 00
78. M240Q01 VBQ 01
79. M270HW02 V0 00-S11
80. M270HW02 V1
81. M270HW02 V1/20
82. M270HW02 V3
83. T420HB01 V000
84. T420HF04 V0
85. T420HVN01.1
86. T460HF04V0
87. T500DB01 V0
88. T546HF01 V.0
89. T550HVN01.5
90. T576DC01 V1
91. T645HW05 V0

## Appendix B-2

### Documents requested from AU Optronics (Shanghai) Company Limited

Please provide the blueprints and design documents for the following specific LCD panels

(identified by your model number) that detail (i) the arrangement and mechanical spacing of the

layers of material in the panel and (ii) the design of the light pipe or light guide within the specified

LCD panel:

1.  B101EVN06.0 00
2.  B101EVT03.0
3.  B101EVT04.0
4.  B101EW05
5.  B101EW05 0A
6.  B101EW05 V1
7.  B101EW05 V3
8.  B101UAN02.1
9.  B101UAT02.2
10. B101UAT02.2 H/W: 1A
11. B101UAT02.2 H/W: 2A
12. B116HAN03.0
13. B116XTN04.0
14. B116XW02 V0 (H/W:1A)/SZ
15. B116XW03
16. B125XW01 V0 (H/W:3A)
17. B133HAN03.0
18. B133XTF01.2
19. B133XTF01.3
20. B133XTF01.4
21. B133XTN01.2
22. B133XW01 V0 (LED)
23. B133XW03
24. B133XW03 V0 (H/W:EA)
25. B133XW03 V4 (H/W:0A)
26. B133XW03 V4 (OPENCELL)
27. B140XTN01.3 (H/W:0A)
28. B140XTN02.4
29. B140XW01
30. B140XW01 V0 (H/W:0A) OMEGA

31. B140XW01 V1 (H/W:8A)
32. B140XW01 V8 (H/W:5A)
33. B140XW02 V1 (0A) LED
34. B140XW03
35. B140XW04
36. B156HW01 V5 (H/W:0A)
37. B156XTN01.0
38. B156XTN02.2
39. B156XTN02.3
40. B156XTN02.4 (HW:0A)
41. B156XTN03.1
42. B156XW02
43. B156XW02 V2 (H/W:4A)
44. B156XW02 V3 (H/W:4A)
45. B156XW02 V6 (H/W:0A)
46. B156XW02 V6 (H/W:0A) OMEGA
47. B156XW02 V6 (H/W:0A)/HOLDER
48. B156XW02 V6 (H/W:0A)/TAPE
49. B156XW02 V7 (H/W:0A)
50. B156XW03 V0 (LED)
51. B156XW04
52. B156XW04 V5 (H/W:0A)
53. B173RW01 V0 (H/W:1A) (LED)
54. B173RW01 V0 (H/W:1A) OMEGA
55. B173RW01 V2 (H/W:5A)
56. B173RW01 V3 (H/W:5A)
57. B173RW01 - V3
58. B173RW01 - V5
59. M185XTN01.0 00 - S03
60. M185XTN01.0 0A - Z31
61. M185XW01 VD 0A - S03
62. M200RTN01.0
63. M200RW01 V6
64. M215HW01
65. M215HW01 VB 0A - S11
66. M240HW01 v.DQ0 01
67. M240HW01 V6
68. M240HW01 VB 00 - S11
69. M240HW01 VB 0A - S11
70. M240HW01 VD
71. M240HW01 VE
72. M240HW01 - VD
73. M240HW-01-VD
74. M240HW02 V1 00 - S11
75. M240HW02 V6

76. M240HW02-V6
77. M240Q01 VBQ 00
78. M240Q01 VBQ 01
79. M270HW02 V0 00-S11
80. M270HW02 V1
81. M270HW02 V1/20
82. M270HW02 V3
83. T420HB01 V000
84. T420HF04 V0
85. T420HVN01.1
86. T460HF04V0
87. T500DB01 V0
88. T546HF01 V.0
89. T550HVN01.5
90. T576DC01 V1
91. T645HW05 V0

Appendix B-3

**Documents requested from AU Optronics (Xiamen) Company Limited**

Please provide the blueprints and design documents for the following specific LCD panels (identified by your model number) that detail (i) the arrangement and mechanical spacing of the layers of material in the panel and (ii) the design of the light pipe or light guide within the specified LCD panel:

1. B101EVN06.0 00
2. B101EVT03.0
3. B101EVT04.0
4. B101EW05
5. B101EW05 0A
6. B101EW05 V1
7. B101EW05 V3
8. B101UAN02.1
9. B101UAT02.2
10. B101UAT02.2 H/W: 1A
11. B101UAT02.2 H/W: 2A
12. B116HAN03.0
13. B116XTN04.0
14. B116XW02 V0 (H/W:1A)/SZ
15. B116XW03
16. B125XW01 V0 (H/W:3A)
17. B133HAN03.0
18. B133XTF01.2
19. B133XTF01.3
20. B133XTF01.4
21. B133XTN01.2
22. B133XW01 V0 (LED)
23. B133XW03
24. B133XW03 V0 (H/W:EA)
25. B133XW03 V4 (H/W:0A)
26. B133XW03 V4 (OPENCELL)
27. B140XTN01.3 (H/W:0A)
28. B140XTN02.4
29. B140XW01
30. B140XW01 V0 (H/W:0A) OMEGA

31. B140XW01 V1 (H/W:8A)
32. B140XW01 V8 (H/W:5A)
33. B140XW02 V1 (0A) LED
34. B140XW03
35. B140XW04
36. B156HW01 V5 (H/W:0A)
37. B156XTN01.0
38. B156XTN02.2
39. B156XTN02.3
40. B156XTN02.4 (HW:0A)
41. B156XTN03.1
42. B156XW02
43. B156XW02 V2 (H/W:4A)
44. B156XW02 V3 (H/W:4A)
45. B156XW02 V6 (H/W:0A)
46. B156XW02 V6 (H/W:0A) OMEGA
47. B156XW02 V6 (H/W:0A)/HOLDER
48. B156XW02 V6 (H/W:0A)/TAPE
49. B156XW02 V7 (H/W:0A)
50. B156XW03 V0 (LED)
51. B156XW04
52. B156XW04 V5 (H/W:0A)
53. B173RW01 V0 (H/W:1A) (LED)
54. B173RW01 V0 (H/W:1A) OMEGA
55. B173RW01 V2 (H/W:5A)
56. B173RW01 V3 (H/W:5A)
57. B173RW01-V3
58. B173RW01-V5
59. M185XTN01.0 00-S03
60. M185XTN01.0 0A-Z31
61. M185XW01 VD 0A-S03
62. M200RTN01.0
63. M200RW01 V6
64. M215HW01
65. M215HW01 VB 0A-S11
66. M240HW01 v.DQ0 01
67. M240HW01 V6
68. M240HW01 VB 00-S11
69. M240HW01 VB 0A-S11
70. M240HW01 VD
71. M240HW01 VE
72. M240HW01-VD
73. M240HW-01-VD
74. M240HW02 V1 00-S11
75. M240HW02 V6

76. M240HW02-V6
77. M240Q01 VBQ 00
78. M240Q01 VBQ 01
79. M270HW02 V0 00-S11
80. M270HW02 V1
81. M270HW02 V1/20
82. M270HW02 V3
83. T420HB01 V000
84. T420HF04 V0
85. T420HVN01.1
86. T460HF04V0
87. T500DB01 V0
88. T546HF01 V.0
89. T550HVN01.5
90. T576DC01 V1
91. T645HW05 V0

## Appendix B-4

### Documents requested from Innolux Corporation (Nanjing)

Please provide the blueprints and design documents for the following specific LCD panels (identified by your model number) that detail (i) the arrangement and mechanical spacing of the layers of material in the panel and (ii) the design of the light pipe or light guide within the specified LCD panel:

1. AT070TNA2
2. AT070TNA2 V1
3. BT140GW01 V.9/F
4. BT140GW02 V.9
5. BT140GW03
6. BT140W03
7. EJ070NA-01F
8. EJ080NA-04A
9. M170EGE-L20
10. M185B3-LA1 C1
11. M185BGE-L10 (C1/C2)
12. M185BGE-L22
13. M185BGE-L23
14. M190CGE-L20
15. M20001-L02 (912)
16. M200FGE-L20
17. M200FGE-L20 C1
18. M200FGE-L23
19. M200O3-LA1 C1
20. M200O3-LA3
21. M215H3-LA1 C1
22. M215HGE-L10 (C1/C2)
23. M215HGE-L21
24. M215HGE-L23
25. M215HGE-L23 (C1)
26. M230HGE-L20 (C1)
27. M236H1-L01
28. M236HGE-L10
29. M236HGE-L20

30. M236HGE-L20 V3.0
31. M270HGE-L10
32. M270HGE-L20
33. M270HGE-L20 (C1/C2)
34. M270HHF-L10 (3D 120HZ)
35. MT185GW01-V2 (1231)
36. MT190AW02-V4
37. N116BGE-L32
38. N116BGE-L41
39. N116BGE-L42
40. N116HSE-EA1
41. N116HSE-EJ1
42. N133BGE-L41
43. N133HSE-EA1
44. N140B6-L08
45. N140B6-L24
46. N140BGE-L22
47. N140BGE-L42
48. N156B3-L0B (CCFL)/2ND
49. N156B6-L0B
50. N156B6-L3D 3D
51. N156BGE-E21
52. N156BGE-L11
53. N156BGE-L21
54. N156BGE-L21 OMEGA
55. N156BGE-L41
56. N156BGE-L42
57. N173FGE-L21
58. N173FGE-L23
59. N173HGE-L11
60. N173HGE-L21
61. N173O6-L02 ZBD
62. N184H6-L02
63. NLED14WXGAGS
64. TPM185B1-B3LA
65. TPM215RW01-HGEL01
66. V200HJ2-LE2
67. V236H1-LE6
68. V500HJ1-LE2
69. V500HK1-LS5

Appendix B-5

Documents requested from Innolux Corporation (Shanghai)

Please provide the blueprints and design documents for the following specific LCD panels (identified by your model number) that detail (i) the arrangement and mechanical spacing of the layers of material in the panel and (ii) the design of the light pipe or light guide within the specified LCD panel:

1.  AT070TNA2
2.  AT070TNA2 V1
3.  BT140GW01 V.9/F
4.  BT140GW02 V.9
5.  BT140GW03
6.  BT140W03
7.  EJ070NA-01F
8.  EJ080NA-04A
9.  M170EGE-L20
10. M185B3-LA1 C1
11. M185BGE-L10 (C1/C2)
12. M185BGE-L22
13. M185BGE-L23
14. M190CGE-L20
15. M20001-L02 (912)
16. M200FGE-L20
17. M200FGE-L20 C1
18. M200FGE-L23
19. M200O3-LA1 C1
20. M200O3-LA3
21. M215H3-LA1 C1
22. M215HGE-L10 (C1/C2)
23. M215HGE-L21
24. M215HGE-L23
25. M215HGE-L23 (C1)
26. M230HGE-L20 (C1)
27. M236H1-L01
28. M236HGE-L10
29. M236HGE-L20

30. M236HGE-L20 V3.0
31. M270HGE-L10
32. M270HGE-L20
33. M270HGE-L20 (C1/C2)
34. M270HHF-L10 (3D 120HZ)
35. MT185GW01-V2 (1231)
36. MT190AW02-V4
37. N116BGE-L32
38. N116BGE-L41
39. N116BGE-L42
40. N116HSE-EA1
41. N116HSE-EJ1
42. N133BGE-L41
43. N133HSE-EA1
44. N140B6-L08
45. N140B6-L24
46. N140BGE-L22
47. N140BGE-L42
48. N156B3-L0B (CCFL)/2ND
49. N156B6-L0B
50. N156B6-L3D 3D
51. N156BGE-E21
52. N156BGE-L11
53. N156BGE-L21
54. N156BGE-L21 OMEGA
55. N156BGE-L41
56. N156BGE-L42
57. N173FGE-L21
58. N173FGE-L23
59. N173HGE-L11
60. N173HGE-L21
61. N173O6-L02 ZBD
62. N184H6-L02
63. NLED14WXGAGS
64. TPM185B1-B3LA
65. TPM215RW01-HGEL01
66. V200HJ2-LE2
67. V236H1-LE6
68. V500HJ1-LE2
69. V500HK1-LS5

## Appendix B-6

### Documents requested from Innolux Corporation (Ningbo)

Please provide the blueprints and design documents for the following specific LCD panels (identified by your model number) that detail (i) the arrangement and mechanical spacing of the layers of material in the panel and (ii) the design of the light pipe or light guide within the specified LCD panel:

1. AT070TNA2
2. AT070TNA2 V1
3. BT140GW01 V.9/F
4. BT140GW02 V.9
5. BT140GW03
6. BT140W03
7. EJ070NA-01F
8. EJ080NA-04A
9. M170EGE-L20
10. M185B3-LA1 C1
11. M185BGE-L10 (C1/C2)
12. M185BGE-L22
13. M185BGE-L23
14. M190CGE-L20
15. M20001-L02 (912)
16. M200FGE-L20
17. M200FGE-L20 C1
18. M200FGE-L23
19. M200O3-LA1 C1
20. M200O3-LA3
21. M215H3-LA1 C1
22. M215HGE-L10 (C1/C2)
23. M215HGE-L21
24. M215HGE-L23
25. M215HGE-L23 (C1)
26. M230HGE-L20 (C1)
27. M236H1-L01
28. M236HGE-L10
29. M236HGE-L20
30. M236HGE-L20 V3.0

31. M270HGE-L10
32. M270HGE-L20
33. M270HGE-L20 (C1/C2)
34. M270HHF-L10 (3D 120HZ)
35. MT185GW01-V2 (1231)
36. MT190AW02-V4
37. N116BGE-L32
38. N116BGE-L41
39. N116BGE-L42
40. N116HSE-EA1
41. N116HSE-EJ1
42. N133BGE-L41
43. N133HSE-EA1
44. N140B6-L08
45. N140B6-L24
46. N140BGE-L22
47. N140BGE-L42
48. N156B3-L0B (CCFL)/2ND
49. N156B6-L0B
50. N156B6-L3D 3D
51. N156BGE-E21
52. N156BGE-L11
53. N156BGE-L21
54. N156BGE-L21 OMEGA
55. N156BGE-L41
56. N156BGE-L42
57. N173FGE-L21
58. N173FGE-L23
59. N173HGE-L11
60. N173HGE-L21
61. N173O6-L02 ZBD
62. N184H6-L02
63. NLED14WXGAGS
64. TPM185B1-B3LA
65. TPM215RW01-HGEL01
66. V200HJ2-LE2
67. V236H1-LE6
68. V500HJ1-LE2
69. V500HK1-LS5

Appendix B-7

Documents requested from Innolux Corporation (Nanghai)

Please provide the blueprints and design documents for the following specific LCD panels

(identified by your model number) that detail (i) the arrangement and mechanical spacing of the

layers of material in the panel and (ii) the design of the light pipe or light guide within the specified

LCD panel:

1. AT070TNA2
2. AT070TNA2 V1
3. BT140GW01 V.9/F
4. BT140GW02 V.9
5. BT140GW03
6. BT140W03
7. EJ070NA-01F
8. EJ080NA-04A
9. M170EGE-L20
10. M185B3-LA1 C1
11. M185BGE-L10 (C1/C2)
12. M185BGE-L22
13. M185BGE-L23
14. M190CGE-L20
15. M20001-L02 (912)
16. M200FGE-L20
17. M200FGE-L20 C1
18. M200FGE-L23
19. M200O3-LA1 C1
20. M200O3-LA3
21. M215H3-LA1 C1
22. M215HGF-L10 (C1/C2)
23. M215HGE-L21
24. M215HGE-L23
25. M215HGE-L23 (C1)
26. M230HGE-L20 (C1)
27. M236H1-L01
28. M236HGE-L10
29. M236HGE-L20
30. M236HGE-L20 V3.0

31. M270HGE-L10
32. M270HGE-L20
33. M270HGE-L20 (C1/C2)
34. M270HHF-L10 (3D 120HZ)
35. MT185GW01-V2 (1231)
36. MT190AW02-V4
37. N116BGE-L32
38. N116BGE-L41
39. N116BGE-L42
40. N116HSE-EA1
41. N116HSE-EJ1
42. N133BGE-L41
43. N133HSE-EA1
44. N140B6-L08
45. N140B6-L24
46. N140BGE-L22
47. N140BGE-L42
48. N156B3-L0B (CCFL)/2ND
49. N156B6-L0B
50. N156B6-L3D 3D
51. N156BGE-E21
52. N156BGE-L11
53. N156BGE-L21
54. N156BGE-L21 OMEGA
55. N156BGE-L41
56. N156BGE-L42
57. N173FGE-L21
58. N173FGE-L23
59. N173HGE-L11
60. N173HGE-L21
61. N173O6-L02 ZBD
62. N184H6-L02
63. NLED14WXGAGS
64. TPM185B1-B3LA
65. TPM215RW01-HGEL01
66. V200HJ2-LE2
67. V236H1-LE6
68. V500HJ1-LE2
69. V500HK1-LS5

Appendix B-8

**Documents requested from Suzhou Raken Technology Company Limited**

Please provide the blueprints and design documents for the following specific LCD panels
(identified by your model number) that detail (i) the arrangement and mechanical spacing of the
layers of material in the panel and (ii) the design of the light pipe or light guide within the specified
LCD panel:

1. LC470EUH-SCR1
2. LM200WD3-TJA1
3. LM200WD3-TJAA
4. LM215WF4-TJA1
5. LM230WF5 TJA1
6. LM230WF5 TJAA
7. LM230WF5-TEA1
8. LM230WF5-TJA1
9. RB2LM200WD3-TAP2 TJA1
10. RB2LM200WD3-TBP2 TJAA
11. RB2LM230WF5-TAB1
12. RB2LM230WF5-TAP2
13. RB2LM230WF5-TBP2
14. RB2LM230WF5-TEA1
15. RB5LM230WFA-SNP1
16. RB5LM270WF6-SNP3

Appendix B-9

**Documents requested from L&T Display Technology (Fujian) Limited**

Please provide the blueprints and design documents for the following specific LCD panels

(identified by your model number) that detail (i) the arrangement and mechanical spacing of the

layers of material in the panel and (ii) the design of the light pipe or light guide within the specified

LCD panel:

1. BM200WD3 T2BB
2. BM200WD3 TJCA
3. BM230WF5 T2BB
4. BM230WF5 TJC3
5. LC370EUG(LD)(A6)
6. LM185WH2 T2AA
7. LM185WH2 T2BB
8. LM230WF5 TRA1
9. LM230WF5 TRA2
10. LM230WF5 TRC1
11. LM230WF5 TRC2

## Appendix B-10

### Documents requested from HannStar Display (Nanjing) Corporation

Please provide the blueprints and design documents for the following specific LCD panels (identified by your model number) that detail (i) the arrangement and mechanical spacing of the layers of material in the panel and (ii) the design of the light pipe or light guide within the specified LCD panel:

1. HSD101PWW1-A00 REV2
2. HSD121PHW1-A03/HIMAX
3. HSD140PHW1-B00
4. HSD160PHW1-B00
5. HSD173PUW1-A00/REV1/ESD

## Appendix B-11

### Documents requested from HannSpree Display Technology (Nanjing) Inc.

Please provide the blueprints and design documents for the following specific LCD panels (identified by your model number) that detail (i) the arrangement and mechanical spacing of the layers of material in the panel and (ii) the design of the light pipe or light guide within the specified LCD panel:

1. HSD101PWW1-A00 REV2
2. HSD121PHW1-A03/HIMAX
3. HSD140PHW1-B00
4. HSD160PHW1-B00
5. HSD173PUW1-A00/REV1/ESD

## Appendix B-12

### Documents requested from InfoVision Optoelectronics (Kunshan) Company Limited

Please provide the blueprints and design documents for the following specific LCD panels (identified by your model number) that detail (i) the arrangement and mechanical spacing of the layers of material in the panel and (ii) the design of the light pipe or light guide within the specified LCD panel:

1. M133NWN1 R1
2. P116NWR1 R2
3. P116NWR1 R6
4. P140NWR1 R0 (OPENCELL)
5. P140NWR1 R0/U47

Appendix B-13

**Documents requested from CPT Display Technology (Shenzhen) Limited**

Please provide the blueprints and design documents for the following specific LCD panels

(identified by your model number) that detail (i) the arrangement and mechanical spacing of the

layers of material in the panel and (ii) the design of the light pipe or light guide within the specified

LCD panel:

1. CLAA133UA03 CW/000
2. CLAA133WA01A/101
3. CLAA156WA07A 3D
4. CLAA156WA07A 3D/010
5. CLAA173UA01A V1 OMEGA
6. CLAB133UA02/MS
7. CLAB133WB01/3D(OPENCELL)

## Appendix B-14

### Documents requested from CPT Display Technology (Fujian) Limited

Please provide the blueprints and design documents for the following specific LCD panels (identified by your model number) that detail (i) the arrangement and mechanical spacing of the layers of material in the panel and (ii) the design of the light pipe or light guide within the specified LCD panel:

1. CLAA133UA03 CW/000
2. CLAA133WA01A/101
3. CLAA156WA07A 3D
4. CLAA156WA07A 3D/010
5. CLAA173UA01A V1 OMEGA
6. CLAB133UA02/MS
7. CLAB133WB01/3D(OPENCELL)

## Appendix B-15

## Documents requested from CPT TPV Optical (Fujian) Limited

Please provide the blueprints and design documents for the following specific LCD panels
(identified by your model number) that detail (i) the arrangement and mechanical spacing of the
layers of material in the panel and (ii) the design of the light pipe or light guide within the specified
LCD panel:

1. CLAA133UA03 CW/000
2. CLAA133WA01A/101
3. CLAA156WA07A 3D
4. CLAA156WA07A 3D/010
5. CLAA173UA01A V1 OMEGA
6. CLAB133UA02/MS
7. CLAB133WB01/3D(OPENCELL)

**Appendix B-16**

**Documents requested from Chunghwa Picture Tubes (Wujiang) Limited**

Please provide the blueprints and design documents for the following specific LCD panels

(identified by your model number) that detail (i) the arrangement and mechanical spacing of the

layers of material in the panel and (ii) the design of the light pipe or light guide within the specified

LCD panel:

1. CLAA133UA03 CW/000
2. CLAA133WA01A/101
3. CLAA156WA07A 3D
4. CLAA156WA07A 3D/010
5. CLAA173UA01A V1 OMEGA
6. CLAB133UA02/MS
7. CLAB133WB01/3D(OPENCELL)

**Appendix B-17**

**Documents requested from CPTF Visual Display (Fuzhou) Limited and CPTF Optronics Company Limited**

Please provide the blueprints and design documents for the following specific LCD panels (identified by your model number) that detail (i) the arrangement and mechanical spacing of the layers of material in the panel and (ii) the design of the light pipe or light guide within the specified LCD panel:

1. CLAA133UA03 CW/000
2. CLAA133WA01A/101
3. CLAA156WA07A 3D
4. CLAA156WA07A 3D/010
5. CLAA173UA01A V1 OMEGA
6. CLAB133UA02/MS
7. CLAB133WB01/3D(OPENCELL)

Appendix C

Protective Order

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GRAPHICS PROPERTIES HOLDINGS, INC., | |
| Plaintiff, | C.A. No. 12-209-LPS |
| v. | Jury Trial Demanded |
| ACER AMERICA CORPORATION, and ACER, INC., | |
| Defendants. | |
| GRAPHICS PROPERTIES HOLDINGS, INC., | |
| Plaintiff, | |
| v. | C.A. No. 12-210-LPS |
| ASUS COMPUTER INTERNATIONAL, INC., | Jury Trial Demanded |
| Defendant. | |
| GRAPHICS PROPERTIES HOLDINGS, INC., | |
| Plaintiff, | C.A. No. 12-211-LPS |
| v. | Jury Trial Demanded |
| PANASONIC CORPORATION OF NORTH AMERICA, and PANASONIC CORPORATION | |
| Defendants. | |

| | |
|---|---|
| GRAPHICS PROPERTIES HOLDINGS, INC., | |
| Plaintiff, | C.A. No. 12-212-LPS |
| v. | Jury Trial Demanded |
| SHARP ELECTRONICS CORPORATION, and SHARP CORPORATION, | |
| Defendants. | |
| GRAPHICS PROPERTIES HOLDINGS, INC., | |
| Plaintiff, | C.A. No. 12-213-LPS |
| v. | Jury Trial Demanded |
| TOSHIBA AMERICA INFORMATION SYSTEMS, INC. and TOSHIBA CORPORATION, | |
| Defendants. | |
| GRAPHICS PROPERTIES HOLDINGS, INC., | |
| Plaintiff, | C.A. No. 12-214-LPS |
| v. | Jury Trial Demanded |
| VIZIO, INC., | |
| Defendant. | |

## [PROPOSED] STIPULATED PROTECTIVE ORDER

The Parties, Graphics Properties Holdings, Inc., ("Plaintiff" or "GPH"), and Acer America Corporation, Acer, Inc., Asus Computer International, Inc., Panasonic Corporation of North America, Panasonic Corporation,  Sharp Electronics Corporation, Sharp Corporation,

Toshiba America Information Systems, Inc., Toshiba Corporation, and Vizio, Inc., (collectively, "Defendants"), recognize that information and materials sought, produced, and/or exhibited in any of the above-captioned matters by the Parties or produced by third parties may contain confidential, proprietary, and/or private information for which special protection from public disclosure and from use for any purpose other than prosecuting the action in which they are produced would be warranted.

To expedite the flow of discovery material, to facilitate prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the Parties are entitled to keep confidential, to ensure only materials entitled such confidentiality are subject to confidential treatment, and to ensure the Parties are permitted reasonably necessary use of such materials in preparation for and during trial, the Parties hereby stipulate to the following protective order and pursuant to Federal Rule of Civil Procedure 26(c), **IT IS HEREBY ORDERED THAT:**

1.   **PURPOSES AND LIMITATIONS**

1.1   This Protective Order is intended to protect confidential, proprietary, and/or private information for which special protection from public disclosure is permitted that is likely to be produced or disclosed in any of the above-captioned actions. The Parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords extends only to the limited information or items that are entitled to confidential treatment under applicable legal principles.

1.2   To the extent that any one of Defendants in this litigation provides Protected Material under the terms of this Protective Order to Plaintiff, Plaintiff shall not share that material with the other Defendant(s) in this litigation, absent a further Court order or express

permission from the producing Defendant or its counsel.  This Order does not confer any right to any one Defendant to access the Protected Material of any other Defendant without the consent of the Producing Party.

2.  **DEFINITIONS**

2.1  "CONFIDENTIAL INFORMATION, SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL INFORMATION" Information or Items:  Confidential information (regardless of how generated, stored, or maintained) or tangible things that the Designating Party (i) would not normally reveal to third parties except in confidence, or has undertaken with others to maintain in confidence, (ii) believes in good faith is significantly sensitive, or  (iii) protected by a right to privacy under federal or state law or any other applicable privilege or right related to confidentiality or privacy.

2.2  "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" or "OUTSIDE COUNSEL EYES ONLY" Information or Items:  Confidential Information that constitutes proprietary financial or technical or commercially sensitive competitive information that the producing Party maintains as highly confidential in its business, including information obtained from a nonparty pursuant to a current Nondisclosure Agreement ("NDA"), information relating to future products not yet commercially released, strategic plans, code, technical documents that would reveal trade secrets, and settlement agreements or settlement communications, the disclosure of which is likely to cause harm to the competitive position of the Producing Party and/or nonparty from which such information was obtained.

2.3  Counsel (without qualifier):  Outside Counsel or In-House Counsel and all support staff thereof.

4

2.4     Designating Party: A Party or non-party that designates information or items that it produces in Disclosure or Discovery Material as "CONFIDENTIAL INFORMATION, SUBJECT TO PROTECTIVE ORDER," "CONFIDENTIAL INFORMATION," "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" or "OUTSIDE COUNSEL EYES ONLY."

2.5     Disclosure or Discovery Material: All items or information, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, generated, or otherwise provided in any of the above-captioned actions by the Parties or by non-parties.

2.6     Expert: A person who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in any of the above-captioned actions and who is not a past or current officer, director or employee of a Party or of a competitor of a Party and who, at the time of retention, does not anticipate becoming an officer, director or employee of a Party or of a competitor of a Party. The definition of Expert extends to that person's engineering, technical, accounting, financial or other support personnel. Nothing in this order purports to change the requirements for offering testimony under Fed. R. Evid. 703, or to define the term "expert" for purposes other than those addressed in this Protective Order.

2.7     In-House Counsel: Attorneys who are employees of a Party, or attorneys who are independent contractors of a Party and provide legal advice on an exclusive basis to that Party. With respect to a Party located outside the United States, In-House Counsel includes that Party's employees providing legal-related advice and assisting with the preparation of an action for trial.

2.8     Outside Counsel: Attorneys who are not employees of a Party but who are retained to represent or advise a Party in any of the above-captioned actions and have appeared

in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party, including supporting personnel employed by the attorneys, such as paralegals, legal translators, legal secretary, legal clerks and shorthand reporters, or independent legal translators retained to translate in connection with the action, or independent shorthand reporters retained to record and transcribe testimony in connection with the action.

2.9    Party:  Any Party to any of the above-captioned actions, including all of its officers, directors, employees, consultants, retained experts, and all support staff thereof.  Each party to the above-captioned actions is a separate Party (and corollaries, *e.g.*, Producing Party, Receiving Party, etc.), regardless of corporate affiliation.

2.10    Producing Party:  A Party or non-party that discloses or produces Disclosure or Discovery Material in any of the above-captioned actions.

2.11    Professional Vendors:  Persons or entities that provide litigation support services (*e.g.*, photocopying; videotaping; translating; electronically stored information (ESI) consulting or document management; preparing exhibits or demonstrations; document management; jury consulting; mock trial coordination, translators) and their employees and subcontractors (excluding mock jurors).

2.12    Protected Material:  Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL   INFORMATION,   SUBJECT   TO   PROTECTIVE   ORDER," "CONFIDENTIAL INFORMATION," "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" or "OUTSIDE COUNSEL EYES ONLY" as provided for in this Order.

2.13    Receiving Party:  A Party that receives Disclosure or Discovery Material from a Producing Party in any of the above-captioned actions.

2.14    "Source Code":  Human-readable programming language text that defines

software, firmware, or electronic hardware descriptions and/or instructions.  Source Code

includes, without limitation, computer code, scripts, assembly, source code listings and

descriptions of source code, formulas, engineering specifications, or schematics that define or

otherwise describe in detail the algorithms or structure of software.  Source Code files include,

but are not limited to documents containing Source Code in "C", "C++", Java, Java scripting

languages, assembler languages, command languages, shell languages, VHDL, Verilog, and

digital signal processor ("DSP") programming languages, as well as ".include files," "make"

files, link files, and other human-readable text files used in the generation and/or building of

software directly executed on a microprocessor, micro-controller, or DSP.  Source Code also

includes source code files, which are text files containing Source Code.  Source Code does not

include binary executable files and object code files, nor does it include tools such as compilers

or linkers.[1]

3.    SCOPE

3.1    The protections conferred by this Order cover not only Protected Material (as

defined *supra*), but also any information copied or extracted from Protected Material, as well as

copies, excerpts, summaries, or compilations thereof, and testimony, conversations, or

presentations by a Party or Counsel to or in court or in other settings that might reveal Protected

Material.  However, the protections conferred by this Stipulation and Order do not cover the

following information: (a) any information that is in the public domain at the time of disclosure

---

[1]    The parties agree that binary executable files and object code files do not need to be
produced and that to the extent binary executable files and object code files are produced, they
shall be afforded the same protection as other "Source Code" defined in this section.

to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information, that a Receiving Party can show, was known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party, or was independently developed by the Receiving Party by its personnel who did not have access to the Protected Material. Any use of Protected Material at trial shall be governed by a separate agreement or order.

4.    **DURATION**

4.1    Even after the termination of all of the above-captioned actions, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees to termination of confidentiality obligations or a court order directs otherwise.

4.2    This Order shall be binding upon the Parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, experts, consultants, and all other persons or organizations over which the Parties have control.

5.    **DESIGNATING PROTECTED MATERIAL**

5.1    Manner and Timing of Designations: Except as otherwise provided in this Order or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be so designated before or at the time the material is disclosed or produced. Designation in conformity with this Order shall be made as follows:

8

(a)   For information in documentary (including "electronically stored information") form (apart from transcripts of depositions or other pretrial or trial proceedings) the Designating Party shall affix the legend "CONFIDENTIAL INFORMATION, SUBJECT TO PROTECTIVE ORDER," "CONFIDENTIAL INFORMATION," "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" or "OUTSIDE COUNSEL EYES ONLY" conspicuously on each page that contains Protected Material.

A Party or non-party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied or produced. Before and during the inspection, all material made available for inspection shall be deemed "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order and, before producing the specified documents, the Producing Party must affix the appropriate legend to each page that contains Protected Material.

(b)   For testimony given in deposition, the Designating Party shall specify any portions of the testimony that it wishes to designate no later than 20 business days after the final transcript of the deposition has been received. For deposition transcripts, the Party or non-party may identify the entirety of a transcript as "CONFIDENTIAL INFORMATION, SUBJECT TO PROTECTIVE ORDER," "CONFIDENTIAL INFORMATION," "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" or "OUTSIDE COUNSEL EYES ONLY," but all deposition transcripts not designated during the deposition will nonetheless be treated as "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" or "OUTSIDE

COUNSEL EYES ONLY," until the time within which it may be appropriately designated as provided for herein has passed. Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material. In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential or outside counsel eyes only confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order in this matter or pursuant to written stipulation of the parties." Counsel for any Designating Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, and the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

(c)     For information produced in some form other than documentary, and for any other tangible items, the Designating Party shall affix, in a prominent place on the exterior of the medium, container or containers in which the information or item is stored, the appropriate legend.

5.2     Inadvertent Failure to Designate Properly: An inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon discovery of an inadvertent failure to

10

designate, a Producing Party may notify the Receiving Party in writing that the material is to be designated.  Upon receipt of such notice, the Receiving Party must make reasonable efforts to assure that the material is thereafter treated in accordance with the provisions of this Order.  The Designating Party shall provide substitute copies of documents bearing the confidentiality designation.  Upon receiving substitute copies, the Receiving Parties shall return or securely destroy, at the Designating Party's option, all material that was not designated properly.

6.   **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1   Timing of Challenges:   A Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2   Meet and Confer:   A Party that elects to initiate a challenge to a Designating Party's confidentiality designation ("Challenging Party") must do so in good faith and must begin the process by identifying, in writing, the documents or information that the Challenging Party contends should be differently designated, and the basis for its belief that the confidentiality designation is improper.  The Designating Party shall, within seven (7) calendar days after receiving such written notice, advise the Challenging Party, in writing, of the basis for its designation or re-designation.  Within seven (7) calendar days thereafter, the parties shall meet and confer directly in good faith to resolve the matter.

6.3   Judicial Intervention:   A Party that elects to challenge a confidentiality designation after considering the justification offered by the Designating Party (as described in the preceding section) may, within seven (7) days of the parties' meet-and-confer, seek the Court's assistance in resolving the dispute in accordance with the Court's discovery dispute

procedures. The burden shall be on the Challenging Party to justify its proposed confidentiality designation.

7.    **ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1    Basic Principles: A Receiving Party may use Protected Material that is disclosed or produced by another Party or non-party in connection with any of the above-captioned actions only for prosecuting, defending, or attempting to settle such action. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the action has been terminated, a Receiving Party must comply with the provisions of Section 10 (FINAL DISPOSITION), below.

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures access to the Protected Material is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL INFORMATION, SUBJECT TO PROTECTIVE ORDER" Information or Items: Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL INFORMATION, SUBJECT TO PROTECTIVE ORDER" only to:

(a)    The Receiving Party's Outside Counsel of record in any of the above-captioned actions, as well as employees or independent contractors (other than disclosure to an Expert, provided for below) of said Outside Counsel to whom disclosure is reasonably necessary to conduct said action (by executing this Order, Outside Counsel acknowledges the obligation on behalf of all employees or independent contractors of Outside Counsel to abide by the terms and

conditions of the Order and will appropriately disclose these terms and conditions to all employees who will have access to information pursuant to the Order);

(b)    No more than five In-House Counsel of the Receiving Party to whom disclosure is reasonably necessary to conduct any of the above-captioned actions and who have signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (attached hereto as Exhibit A) and provided an executed copy to all Parties prior to receiving access to Protected Material;

(c)    Experts (as defined in Section 2.6, *supra*) of the Receiving Party to whom disclosure is reasonably necessary to conduct any of the above-captioned actions and who have signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A) and for which no unresolved objections to such disclosure exist after compliance with the requirements set out in Section 7.4 below.  Without the express prior written consent of the Defendant that produced the Protected Material, no expert or consultant retained by a Defendant in this matter shall have access to "CONFIDENTIAL INFORMATION, SUBJECT TO PROTECTIVE ORDER," "CONFIDENTIAL INFORMATION," "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" or "OUTSIDE COUNSEL EYES ONLY" material produced by another Defendant in this matter.

(d)    The Court and its personnel;

(e)    Any designated arbitrator or mediator who is assigned to hear this matter, or who has been selected by the Parties, and his or her staff, who have signed the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A);

(f)    Court reporters and videographers employed in connection with any of the above-captioned actions;

(g)      Professional Vendors to whom disclosure is reasonably necessary to conduct any of the above-captioned actions;

(h)      Persons who appear on the face of the Protected Material as an author, addressee, or recipient of the document or have prior knowledge of the Protected Material;

(i)      During deposition and/or at trial, current employees of the Producing Party that produced the documents or information; and

(j)      Any other person with the prior written consent of the Producing Party.

7.3      Disclosure of "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" Information or Items: Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" only to those persons meeting the descriptions of Section 7.2 (a), (c), (d), (e), (f), (g), (h), (i) and (j).

7.4      Procedures for Approving Disclosure of Protected Material to Experts:

(a)      A Party that seeks to disclose to an Expert any Protected Material first must notify, in writing (including via email), the Designating Party of its intent to make such a disclosure. The notification shall include a copy of the Expert's current *curriculum vitae* and must identify:

(i)      The full name of the Expert and the city and state of the Expert's primary residence;

(ii)      The Expert's current employer(s);

(iii)      Any previous or current contractual relationship with any of the Parties (including any previous or current contractual relationship, known to the Party seeking disclosure, with related corporate entities).

14

The Party that seeks to make such disclosure to an expert of any information or item that has been designated Protected Material need not identify to the Designating Party said information or item to be disclosed.

(b)    A Party that provides the notice described in the preceding section may disclose the subject Protected Material to the identified Expert unless, within ten (10) calendar days of receipt of the notice, the Party receives an objection to the disclosure, in writing (including via email), from the Designating Party.  Any such objection must set forth in detail the grounds on which it is based.

(c)    A Party that receives a timely written objection as described in the preceding section must meet and confer with the Designating Party to try to resolve the matter by agreement within three (3) business days following the objection.  Only if no agreement is reached after the meet and confer, the Designating Party may seek the Court's assistance within three (3) business days from the date of the meet and confer.  If relief from the Court is not sought within that time, the objection shall be deemed withdrawn.  If relief is sought, designated material shall not be disclosed to the Expert in question until the Court resolves the objection.  In any such proceeding, the Designating Party shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to the specific designated Expert.

8.    **FILING PROTECTED MATERIAL**

8.1    All Protected Material must be filed under seal in accordance with the provisions of the United States District Court for the District of Delaware's Revised Administrative Procedures Governing Filing and Service by Electronic Means.

15

9. **USE OF PROTECTED MATERIAL AT COURT HEARINGS OR PROCEEDINGS**

9.1    The use of Protected Material at any Court hearing or proceeding shall be as directed by the Court.  In the event that any material designated as Protected Material is used in any Court hearing or proceeding, the Party proffering the Protected Material or the Producing Party of the Protected Material may request that the Court close the courtroom, but the decision of whether to do so rests with the judge presiding at the hearing or proceeding.

10.    **FINAL DISPOSITION**

10.1    Unless otherwise ordered or agreed in writing by the Producing Party, within thirty (30) days after the final termination of any of the above-captioned actions, including all appeals, each Receiving Party must destroy or return, at the Producing Party's request, all Protected Material received in such action to the Producing Party.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, or any other form of reproducing or capturing any of the Protected Material.  The Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the thirty (30)-day deadline.

10.2    Notwithstanding the preceding section, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence, or attorney work product, even if such materials contain Protected Material.  Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4, *supra*.  In addition, notwithstanding the preceding section, Counsel are entitled to retain any copies that exist on backup tapes or other media used for disaster recovery purposes, provided that such copies will not be accessed except upon notice to the Producing Party.

## 11.   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

11.1   If a Receiving Party is served with a subpoena or an order issued in another action that would compel disclosure of any Protected Material, the Receiving Party must so notify the Designating Party, in writing within seven (7) business days so that the Designating Party has an opportunity to object to the disclosure of Protected Material.  Such notification must include a copy of the subpoena or court order.

11.2   The Receiving Party also must within seven (7) business days  inform in writing the Party who caused the subpoena or order to issue in the other action that some or all the material covered by the subpoena or order is the subject of this Order.

11.3   The purpose of imposing this duty is to afford the Designating Party in any of the above-captioned actions an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.  The Designating Party shall bear the burdens and the expenses of seeking protection of its confidential material in that court.

11.4   Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in any of the above-captioned actions to disobey a lawful directive from another court.

## 12.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

12.1   If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately: (a) notify the Designating Party, in writing, of the unauthorized disclosure(s); (b) use its best efforts to retrieve all copies of the Protected Material; (c) inform the person(s) to whom unauthorized disclosures were made of all the terms of this

Order; and (d) request that such person(s) execute the "Acknowledgement and Agreement to Be Bound by Stipulated Protective Order" (Exhibit A).

### 13.   MISCELLANEOUS

13.1   Right to Further Relief: Nothing in this Order abridges the right of any person to seek further or additional protection of any Disclosure or Discovery Material or to seek modification of the Order by the Court in the future.

13.2   Right to Assert Other Objections: By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Order.

13.3   No Restriction on Advising Client: Nothing in this Order shall be construed to prevent Counsel from advising their respective clients regarding any of the above-captioned actions, even if Counsel must rely on Protected Information in formulating such advice, as long as no Protected Information is disclosed in violation of this Order.

13.4   Limitation on Discovery from Experts:  Absent good cause, and consistent with Rule 26(b)(4) of the Federal Rules of Civil Procedure, discovery of materials provided to Experts is limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the Expert in formulating his or her final report, trial or deposition testimony or any opinion in the above-captioned actions.  Drafts of expert reports (including notes and outlines) and communications between an Expert (as defined in Section 2.6) and a Party and/or a Party's Counsel are not discoverable.  No discovery may be taken from or about any consulting Expert except to the extent that a consulting Expert has provided information, opinions or other materials that a testifying Expert relied on in formulating his or her final report, trial or

deposition testimony or any opinion in the above-captioned actions.  Reports and materials exempt from discovery under this section shall be treated as attorney work product for the purposes of any of the above-captioned actions and Protective Order.  No conversations or communications between any testifying or consulting Experts retained by Counsel (or the Experts' assistants) and the retaining Party's employees, consultants, and In-house or Outside Counsel occurring after the filing date of the action will be subject to discovery unless the conversations or communications are relied upon by a testifying Expert in formulating his or her final report, trial or deposition testimony or any opinion in the above-captioned actions.

13.5    Party Use of Own Protected Material:  Nothing in this Protective Order shall limit any Party's use of its own documents and information, nor shall it prevent any Party from disclosing its own Protected Information or Material or other documents to any person.  Such disclosure shall not affect any designations made pursuant to the terms of this Protective Order, so long as the disclosure is made in a manner that is reasonably calculated to maintain the confidentiality of the information.

## 14.    INADVERTENT PRODUCTION OF PRIVILEGED DOCUMENTS

14.1    If any Party, through inadvertence, produces any Disclosure or Discovery Material information that it believes is immune from discovery pursuant to the attorney-client privilege, work product immunity, or any other applicable privilege or immunity ("Privileged Material"), the Producing Party may give written notice to the Receiving Party that such Privileged Material is deemed privileged and that return of such Privileged Material is requested.  Upon receipt of such written notice, the Receiving Party shall within two (2) business days gather the original and all copies of such Privileged Material of which the Receiving Party is aware and shall immediately return the original and all such copies to the Producing Party except

that the Receiving Party may retain one copy for the sole purpose of supplying it to the Court in connection with a dispute over the protections afforded to the document.  If the Producing Party discovers that privileged, work-product, or otherwise protected Disclosure and Discovery Material information has been inadvertently produced based upon the Receiving Party's use of such information during a deposition or hearing, the Producing party may orally request the return of the information and that the Receiving Party immediately cease examination or argument regarding the Privileged Material within the document.  Upon such an oral request, the Receiving Party shall  (a) within two (2) business days return the Disclosure and Discovery Material information and all copies to the Producing Party (except one copy as discussed above), and (b) immediately cease examination or argument regarding such Privileged Material information.  The return of such Disclosure and Discovery Material to the Producing Party shall not preclude the Receiving Party from later moving the Court to compel production of the returned Disclosure and Discovery Material on the basis that any privilege applicable thereto has been waived.   However, the inadvertent production of privileged or otherwise protected Disclosure or Discovery Material in any of the above-captioned actions shall not be deemed— and the Parties expressly waive their rights to argue otherwise—to constitute a waiver of any privilege or protection that otherwise would adhere to the Disclosure or Discovery Material information.

A Party or non-party that makes original documents or materials available for inspection does not waive the attorney-client privilege, work product immunity, or any other applicable privilege or immunity on the sole basis that such material was provided for inspection.

14.2    The use of keyword searching to screen for and prevent production of documents that are privileged, work product-protected, or immune from discovery under any other

applicable privilege or immunity, constitutes "reasonable steps to prevent disclosure" under Federal Rule of Evidence 502(b).

## 15.   SOURCE CODE AND SOFTWARE CODE

15.1   A Producing Party may designate documents, information, or things as "CONFIDENTIAL SOURCE CODE—OUTSIDE COUNSEL'S EYES ONLY," which shall mean Discovery Material that constitutes or contains non-public Source Code.

15.2   Access to CONFIDENTIAL SOURCE CODE—OUTSIDE COUNSEL'S EYES ONLY information may be permitted only to those persons authorized to receive OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION (as defined in Section 7.3) and subject to the Prosecution Bar in Section 17. Under no circumstances is access to CONFIDENTIAL SOURCE CODE—OUTSIDE COUNSEL'S EYES ONLY information permitted by In-House Counsel of the Receiving Party without written consent of the Producing Party.

15.3   Source Code designated as "CONFIDENTIAL SOURCE CODE—OUTSIDE COUNSEL'S EYES ONLY" shall be made available to the Receiving Party subject to the following restrictions:

(a)   Access to a Producing Party's Source Code shall be provided only on two "stand-alone" computers (that is, computers not connected to any network, intranet, Internet or peripheral device, except that the stand-alone computers may be connected to a printer) at a secure location at the offices of the Producing Party's Counsel or a secure escrow facility at a mutually agreed upon location. Producing Party and Receiving Party agree to make good faith efforts to select a location convenient for parties' attorneys and expert reviewers. The Producing Party may decide, in its sole discretion, whether to produce Source Code at its Counsel's office

or at a secure escrow facility.  If either Party requests that Source Code be made available at a secure escrow facility, and the Producing Party agrees to make the Source Code available at a secure escrow facility, the Party making the escrow request shall pay all costs payable to the escrow facility.  No outside electronic devices, including but not limited to laptop computers, USB flash drives, zip drives, cell phones, portable printers, or devices with camera functionalities shall be permitted in the same room as the stand-alone computers.

(b)     Source Code shall be made available during regular business hours (9:00 a.m. to 6:00 p.m. local time, Monday through Friday except legal Holidays) on 48-hour notice pursuant to this Section.  Notice must be given during regular business hours (defined above), and the hours that the Source Code will be made available shall not be altered based upon the timing of the notice.  Upon reasonable notice from the Receiving Party, which shall not be less than three (3) business days in advance, the Producing Party shall make reasonable efforts to accommodate a Receiving Party's request for access to the secure location outside of normal business hours.  Such an expanded review period may include Saturdays, but shall not begin earlier than 8:00 a.m. and shall not end later than 8:00 p.m. local time for any day.

(c)     All persons seeking access to CONFIDENTIAL SOURCE CODE— OUTSIDE COUNSEL'S EYES ONLY information on behalf of a Receiving Party shall be identified in writing to the Producing Party at least seven (7) business days in advance of the first time that such person reviews Source Code or is provided access to CONFIDENTIAL SOURCE CODE—OUTSIDE COUNSEL'S EYES ONLY information.  Such identification shall be in addition to any disclosure required under Section 7 of this Protective Order.

(d)     The Producing Party must produce code in computer-searchable format, but need not produce executable source code except by agreement of the Parties or order of the

Court.  The stand-alone computers provided by the Producing Party shall run a reasonably current version of a mutually agreed upon operating system such as Apple OS X, Microsoft Windows, or Linux.  Source Code files must be produced as they are stored in the ordinary course of business.  Furthermore, each stand-alone computer will have a copy of a mutually agreed, commercially available, source code review tool, such as Microsoft Visual Studio, as a tool for use in analyzing the code.  Additionally, as provided in Section (h), other tools provided by the Receiving Party may be used.  Under no circumstances will the source code be compiled into executable code by the Receiving Party.

(e)     The Producing Party may require proper identification of all persons seeking access to CONFIDENTIAL SOURCE CODE—OUTSIDE COUNSEL'S EYES ONLY information before any access to a stand-alone secure computer, and each and every time a person accesses a stand-alone secure computer, the Producing Party  may require each such person to complete a Source Code review log identifying: (1) the person's name; (2) the date and time access began; (3) the date and time access ended.

(f)     The Producing Party must allow printing of paper copies of Source Code at the time of inspection by the Receiving Party, but not to exceed fifty (50) consecutive pages and not to exceed ten percent of the entire Source Code without prior agreement of the Parties, which the Receiving Party may take away upon completing an inspection.  Such paper copies must be identified to the Producing Party prior to taking away such copies.  The Party receiving paper copies of such Source Code must keep that Source Code in a secured container or location at all times.  Paper copies of Source Code may not themselves be copied and may not be removed from a secured container unless in a secured, private area.  Notwithstanding the foregoing sentence, Counsel may make copies of the paper copies of Source Code for use as

exhibits in court proceedings, expert reports, and at depositions, subject to all restrictions provided in this Protective Order.  Furthermore, the parties will also exchange (by hand delivery) copies of the paper copies of Source Code used as exhibits for court proceedings, expert reports, and at depositions, when so used.  These additional copies will be treated the same as the original copies.  The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format except for the reasonably necessary use as an exhibit at deposition, as an exhibit to an expert report, as an exhibit to a filing with the Court, or as an exhibit at trial.  The Producing Party may challenge the amount of Source Code printed in paper form by the Receiving Party, however, to the extent that the Producing Party does not object to the amount of printed source code, the Producing Party shall produce to Receiving Party within five (5) business day the non-objectionable amount of such printed source code.  In the event of such objection, the Parties will meet and confer within five (5) business days of the objection being raised and, if the Parties cannot resolve the objection, the Producing Party may raise the objection with the Court.  Failure of the Producing Party to seek Court resolution within five (5) business days of the meet and confer shall constitute a waiver of the specific objection, and the objected to source code shall be produced within two (2) business days of the expiration of time for seeking Court resolution.

(g)     Paper copies of Source Code must include bates numbers and confidentiality labels when printed, and shall be produced within seven (7) days of printing by the Receiving Party to the Producing Party.  The Receiving Party must maintain a complete log of bates numbered pages printed, and must produce such log at the time its first expert reports are served, regardless of the restrictions on expert discovery provided in this Protective Order.  The log must be supplemented with each new expert report and within 10 days after trial.  For

security purposes, a copy of the log must be produced to the Producing Party regardless of any other stipulation or order limiting expert discovery.

> (h)      Each stand-alone computer shall, at the Receiving Party's request, include reasonable analysis tools appropriate for the type of Source Code. The Receiving Party shall provide the tools that it wishes to use to the Producing Party so that the Producing Party may install such tools on the stand-alone computers. The Receiving Party must provide the Producing Party with a CD or DVD containing such licensed software tool(s) at least five (5) business days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the stand-alone computer. The Receiving Party may create a backup copy of the Source Code on the stand-alone computers. The Receiving Party may use searching tools to annotate, number the lines of, and bates label the pages of, the back-up copy of the Source Code. The back-up copy of Source Code will remain on the stand-alone computers and be subject to all of the provisions of this Protective Order governing Source Code.

> (i)      Beginning one week prior to the beginning of trial and continuing through the end of trial, access to the machine-readable version of the Source Code must be provided under the same conditions and with the same limitations and restrictions as provided in this Section in Wilmington, Delaware.

15.4    The Producing Party may visually monitor the activities of the Receiving Party at reasonable intervals during any Source Code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the Source Code and without any attempt to view work product. The Producing Party shall not install any keystroke or other monitoring software on the stand-alone computers.

15.5    Any handwritten notes or other work product, created by the Receiving Party, reflecting CONFIDENTIAL SOURCE CODE—OUTSIDE COUNSEL'S EYES ONLY information shall be marked as CONFIDENTIAL SOURCE CODE—OUTSIDE COUNSEL'S EYES ONLY and shall also be treated as "Source Code" pursuant to this Protective Order.

15.6    To the extent the Receiving Party considers production of specifically identified Source Code files in executable form necessary to prove an element of one or more of its claims, the Parties shall meet and confer.

15.7    Nothing in this Protective Order shall obligate any Party to produce any Source Code, nor does this Protective Order act as an admission that any particular Source Code is discoverable.  Nothing in this Protective Order shall be deemed a waiver of a Party's right to object to the production of Source Code.  The Parties further acknowledge that some or all of the Source Code may be owned by non-parties and outside a Party's possession, custody or control.  Nothing in this Protective Order shall be deemed a waiver of any non-party's right to object to the production of Source Code or object to the manner of any such production.

15.8    The Producing Party, at its sole discretion, may choose to waive any or all of the default requirements in this Section 15 for its own convenience.  Any waiver of any requirement provided in this Section 15 shall not be construed as a future waiver of any requirement provided by this Protective Order without written agreement.

16.    **NONPARTY USE OF THIS PROTECTIVE ORDER**

16.1    A nonparty producing information or material voluntarily or pursuant to a subpoena or a court order may designate such material or information in the same manner and will enjoy the same level of protection under this Order as any party to any of the above-captioned actions.

17. <u>PROSECUTION BAR</u>

17.1 Each individual at and/or on behalf of Plaintiff who receives any technical material designated as "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" or "OUTSIDE COUNSEL EYES ONLY," whether in the form of documents, information testimony or things, shall not supervise or participate in the drafting, filing, or prosecuting of patent applications involving LCD-related technologies from the time the "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" or "OUTSIDE COUNSEL EYES ONLY" material is received until one (1) year following the final resolution of all of the above-captioned action the receiving individual is associated with and of any and all appeals of such action(s).

18. **OTHER PROCEEDINGS**

18.1 <u>Other Proceedings</u>. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "CONFIDENTIAL INFORMATION, SUBJECT TO PROTECTIVE ORDER," "CONFIDENTIAL INFORMATION," "OUTSIDE COUNSEL EYES ONLY CONFIDENTIAL INFORMATION" or "OUTSIDE COUNSEL EYES ONLY" pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

*** **SIGNATURE PAGES TO FOLLOW***

## IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

*/s/ Brian E. Farnan*
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
Farnan LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*
*Graphics Properties Holdings Inc.*

*/s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendants*
*Acer America Corporation*
*and Acer Inc.*

*/s/ John G. Day*
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*/s/ Anne Shea Gaza*
Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Elizabeth R. He (#5345)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
he@rlf.com
*Attorneys for Defendants Sharp Corporation*
*and Sharp Electronics Corporation*

*/s/ John G. Day*
John G. Day (#2403)
Lauren E. Maguire (#4261)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendant Asus Computer*
*International Inc.*

*/s/ Benjamin J. Schladweiler*
Collins J. Seitz, Jr. (#2237)
Benjamin J. Schladweiler (#4601)
SEITZ ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1601
cseitz@seitzross.com
bschladweiler@seitzross.com

*Attorneys for Defendants Toshiba America*

amayo@ashby-geddes.com

*Attorneys for Defendants Panasonic Corporation of North America and Panasonic Corporation*

*Information Systems, Inc. and Toshiba Corporation*

*/s/ Pilar G. Kraman*
Adam W. Poff (#3990)
Pilar G. Kraman (#5199)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Attorneys for Defendant Vizio Inc.*

**PURSUANT TO STIPULATION, IT IS SO ORDERED** this _____ day of

_____, 2012.


_____
HON. LEONARD P. STARK, U.S.D.C.

## EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND BY STIPULATED

PROTECTIVE ORDER

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the District of Delaware in the cases of *Graphics Properties Holdings, Inc. v. Acer America Corp. and Acer, Inc.*, Civ. No. 12-cv-209-LPS; *Graphics Properties Holdings, Inc. v. Asus Computer Int'l, Inc.*, Civ. No. 12-cv-210-LPS; *Graphics Properties Holdings, Inc. v. Panasonic Corp. of North America and Panasonic Corp.*, Civ. No. 12-cv-211-LPS; *Graphics Properties Holdings, Inc. v. Sharp Electronics Corp. and Sharp Corp.*, Civ. No. 12-cv-212-LPS; *Graphics Properties Holdings, Inc. v. Toshiba America Information Sys., Inc. and Toshiba Corp.*, Civ. No. 12-cv-213-LPS; *Graphics Properties Holdings, Inc. v. Vizio, Inc.*, Civ. No. 12-cv-214-LPS. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the District of Delaware for the purpose of enforcing the terms of this Stipulated Protective Order.

Printed name: _____

Present occupation job description: _____

Name of Company or Firm: _____

Address: _____

Date: _____   Signature: _____